**UNITED STATES of America, Plaintiff,**

v.

**Mark Steven HITCHCOCK, Defendant.**

**No. Crim. 98–00716 ACK.**

United States District Court, D. Hawai'i.

Aug. 30, 1999.

Loretta A. Sheehan, Office of U.S. Atty., Honolulu, HI, for plaintiff.

Richard T. Pafundi, Honolulu, HI, Barry D. Edwards, Honolulu, HI, Sarah Courageous, Honolulu, HI, for Mark Steven Hitchcock, defendant.

Mark Steven Hitchcock, California City, CA, pro se.

***ORDER DENYING DEFENDANT'S MOTION TO DISMISS ALL CHARGES AND TO SUPPRESS ALL EVIDENCE FOR VIOLATION OF THE POSSE COMITATUS ACT AND OTHER CONGRESSIONAL DIRECTIVES***

KAY, District Judge.

***BACKGROUND***

On October 30, 1998, the United States Army Criminal Investigation Command ("CID") and Naval Criminal Investigative Service ("NCIS") began investigating United States Marine Benjamin Lake after CID received information that Lake was selling lysergic acid diethylamide ("LSD") to other members of the military. On October 31, 1998, an undercover CID agent purchased LSD from Lake, and sent the LSD to the United States Army Criminal Investigation Laboratory in Forest Park, Georgia for testing.

On November 13, 1998, the undercover CID agent bought two more vials of LSD from Lake and sent the LSD to the United States Army Criminal Investigation Laboratory for testing. After this second buy,

NCIS agents arrested Lake. NCIS agents, knowing Lake was distributing the LSD on base to other military personnel, offered Lake the opportunity to cooperate with law enforcement. Facing court martial and hoping for leniency, Lake agreed to cooperate, and he identified Defendant Mark Stephen Hitchcock, a civilian, as his source for LSD.

Investigation in the instant case began following Lake's naming of Defendant as his supplier of LSD. In that the investigation was focused on a civilian, the NCIS lead agent Michael Moran contacted the Drug Enforcement Administration (DEA) and asked that the DEA join the investigation. NCIS remained involved in the investigation, but only two NCIS agents, Michael Moran and Robert Rzepka, were assigned to the case.

The DEA assumed control and direction of the investigation, and assigned Special Agent John Meade as case agent. Lake, working at the direction of DEA Agent Meade, made two monitored phone calls to Defendant and arranged to pay Defendant for the LSD sold on November 13. The calls were made from the DEA District Field Office, and were monitored using DEA equipment. Agent Rzepka was assigned the duty of bringing Lake to and from the Naval Brig so that Lake could cooperate.

On November 14, 1998, Lake met and paid Defendant. DEA funds were used to pay Defendant. On November 16, 1998, Lake, still working at the direction of the DEA, again called Defendant and ordered more LSD. Again, DEA resources were used in making the monitored calls. Later that day, Lake and Defendant met in a supermarket parking lot, and Defendant sold Lake LSD and two squares of blotter paper. During the buy, DEA agents and NCIS Agent Rzepka conducted surveillance of Defendant's residence and kept in contact with the other surveillance team regarding Defendant's wherabouts. After the buy, the DEA agents arrested Defendant. DEA agents seized the LSD and the blotter paper and sent them to the DEA Western Regional Laboratory for analysis.

Once Defendant was arrested, DEA agents executed a federal search warrant at Defendant's house. NCIS Agent Rzepka was present at the search of Defendant's home, under the direction of, and in order to assist, the DEA. Two Army CID agents were also present to render assistance. Neither Agent Rzepka nor the Army CID agents recovered any evidence, although the Army CID agents pointed out evidence to the DEA agents. DEA agents recovered a multitude of drug and drug-related evidence, including a vial of LSD, a Crown Royal bag containing a syringe holding LSD, squares of blotter paper, marijuana, and a digital gram scale. All of the recovered evidence was sent to the DEA Western Regional Laboratory in San Francisco, California for analysis.

Shortly after Defendant's arrest, Agent Meade read Defendant his rights and took Defendant's statement. Agent Moran was present during Meade's interrogation of Defendant.

On May 10, 1999, Defendant filed the instant motion, claiming that dismissal of the instant case is proper under the Posse Comitatus Act and 10 U.S.C. Section 375, because the military was involved in the investigation and arrest of Defendant, a civilian. On July 15, 1999, the government filed its opposition to Defendant's motion. The Court heard oral argument on August 23, 1999.

## DISCUSSION

### I. *No Violation of the Posse Comitatus Act or Section 375 Occurred Because the NCIS Rendered Indirect Assistance*

In opposing Defendant's motion, the government first argues that the Posse Comitatus Act and 10 U.S.C. Section 375 do not apply to the NCIS because the NCIS is a civilian law enforcement agency. To support its position, the government states that in 1992, the Naval Investigative

Service was reorganized by the Secretary of the Navy as the NCIS, and is now comprised of a civilian Director and a civilian chain of command. Department of Defense Policy Directive 5525.5 and Secretary of the Navy Instruction 5820.7B explicitly state that the policy restrictions placed on military involvement in law enforcement activities do not apply to "civilian employee(s) of the Department of Defense" unless such civilians are under the direct command and control of a military officer. DODDIR 5525.5 at 4–6; SEC-NAVNST 5820.7B at 7. Consequently, according to the government, the changes to the NCIS chain of command render the NCIS a "civilian law enforcement agency" which is not subject to the Posse Comitatus Act and Section 375.

Judge Robert Whaley, sitting in the Hawaii District Court, recently addressed this issue, and found that the Posse Comitatus Act applies to the Navy through 10 U.S.C. Section 375, and that its applicability extends to the NCIS.[1] In *United States v. Kapule, et al.,* the court held:

> According to the Government, NCIS agents, as civilian employees of the Department of Navy, are not bound by the limitations of § 375. The Government argues that because § 375 only limits law enforcement activities of members of the armed services, civilian employees of the Department of Navy fall outside the scope of the act. The Court does not find the Government's argument persuasive. The activities of Department of Defense Criminal Investigative Organizations traditionally have been held to the restrictions of the [Posse Comitatus Act] and 10 U.S.C. § 375. Although no other court has yet addressed the implications of the Department of Navy's recent restructuring of its investigative organization, which created a civilian Director and chain of command, common sense dictates that the restrictions of the [Posse Comitatus Act] and § 375 cannot be so easily circumvented. Without a clear statement

from Congress to the contrary, the [Posse Comitatus Act] and § 375 would not appear to permit the kind of loophole asserted by the Government.

No. 97–01189, slip op. at 3–4 (D.Haw. March 31, 1998).

However, the Court need not resolve whether the Posse Comitatus Act applies to the NCIS, because even assuming the Act does apply to the NCIS, the Court finds that it was not violated in this case.

As the Ninth Circuit has recognized, the Posse Comitatus Act, 10 U.S.C. Section 375, and related regulations all allow the military to render "indirect assistance to civilian authorities that does not subject civilians to the exercise of military power that is regulatory, proscriptive, or compulsory in nature." *Khan,* 35 F.3d at 431 (internal quotation marks omitted). The *Khan* Court adopted three tests to determine when military involvement constitutes more than indirect assistance. First, the involvement must not "constitute the exercise of regulatory, proscriptive, or compulsory military power." *Id.* Second, the involvement must not "amount to direct active involvement in the execution of the laws." *Id.* Third, the involvement must not "pervade the activities of civilian authorities." *Id.* "If any of these tests are met, the assistance is not indirect." *Id.*

The *Khan* Court found that none of these tests were met and that assistance by the Navy was indirect where the Navy participated in a civilian investigation by providing ships, communication of the ship's position, aerial reconnaissance, and interception of the ship. The court specifically noted that the Navy personnel on board the ship had acted under the command of the Coast Guard, and that only the Coast Guard had searched the ship and arrested the crew. The court held that "where the Navy provides backup support in a Coast Guard operation and does not participate in the search of the ship or the arrest and interrogation of the

---

**1.** The case is currently on appeal before the    Ninth Circuit.

suspects, the military assistance is not direct, not an exercise of military power, and not pervasive of the activities of civilian authorities." *Id.* at 432; *see also United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1478 (11th Cir.), *cert. denied,* 506 U.S. 964, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992) (where Coast Guard did actual boarding, arrest, interrogation and ensuing investigation of all criminal matters, Navy's participation was deemed passive, and did not implicate the Posse Comitatus Act).

The Seventh Circuit also found no violation of the Posse Comitatus Act and Section 375 in *Hayes v. Hawes,* 921 F.2d 100 (7th Cir.1990). In that case, an agent with the Naval Investigative Service ("NIS") received information that a sailor had purchased cocaine at an arcade near the Naval base. Thereafter, the NIS, working in conjunction with local police, initiated an undercover operation whereby an NIS agent purchased cocaine from the defendant. After completing the transaction, the NIS agent signaled the police, who subsequently arrested the defendant. The Seventh Circuit held that the NIS' involvement was "not sufficiently pervasive to rise to the level of enforcement of the law by the Navy," and that "therefore, that activity does not fall within the ... proscriptions of [Section 375]." *Id.* at 104.

█ Here, the Court finds that the Posse Comitatus Act and 10 U.S.C. Section 375 are not implicated because NCIS merely provided indirect assistance to the DEA. The DEA was the agency that set up the phone calls which Lake made to Defendant. The calls were made from the DEA District Field Office. The phone calls were monitored using DEA equipment. DEA Agent Meade worked directly with Lake, prior to Lake making the phone calls, on what would be said to Defendant. When Lake met with Defendant on November 14, 1998 and November 16, 1998, DEA brought Lake to the scene in a DEA car. DEA was in charge of surveillance of both meetings between Lake and Defendant. On the day of the arrest, it was DEA agent Meade who arrested Defendant. DEA also: (1) read Defendant his rights; (2) took Defendant's statement; (3) applied for the search warrant of Defendant's home; (4) executed the warrant; (4) directed the search of Defendant's home; (5) recovered the evidence; and (6) tested all of the evidence.[2]

Although the NCIS remained on board in the investigation to provide continuity and to assist in getting Lake in and out of the Naval Brig, the Court finds that at no time did the NCIS' participation (1) constitute the exercise of regulatory, proscriptive, or compulsory military power, (2) amount to direct active involvement in the execution of the laws, or (3) pervade the activities of civilian authorities. Furthermore, although Agent Moran participated in the interrogation of Defendant, his involvement was extremely minimal, and was limited to questions pertaining to distribution of drugs on a military base.[3] Finally, while it is true that Agents Moran and Rzepka participated in the surveillance and that Agents Moran and Rzepka, along with two Army CID agents, were present during the search of Defendant's home, all evidence was recovered by the DEA, it was the DEA who was in command of both the surveillance and the search, and it was

**2.** The United States Army Criminal Investigation Laboratory analyzed three exhibits in order to prosecute Lake in a court martial. According to the government, the government did not direct the U.S. Army Criminal Investigation Laboratory to analyze the evidence in order to prosecute a civilian, i.e., Defendant. The analyses were done to present evidence at Lake's court martial. Defendant later requested that the Army re-analyze the evidence in order to get an accurate weight measurement.

**3.** At the hearing, Agent Rzepka indicated that he might have asked some questions during the interrogation of Defendant. However, Agent Meade specifically testified that Agent Rzepka did not ask any questions during the interrogation, and that only Agent Moran had. The Court finds that Agent Meade's recollection on this point is the more accurate of the two.

the DEA who instructed the other agents about the extent of their participation. Because none of the three tests set forth in *Khan* are met, the Court finds that the NCIS' assistance was indirect, and therefore, the Posse Comitatus Act and Section 375 are not implicated.

Additionally, in *Kapule*, Judge Whaley found that there had been no violation of the Posse Comitatus Act despite military involvement in that case. As the court stated:

> The Secretary of Navy Instructions (SECNAVINST) regarding cooperation with civilian law enforcement officials provide that civilian law enforcement restrictions do not apply to actions taken for the primary purpose of furthering a military objective, including protection of Department of Defense equipment. *See* SECNAVINST 5820.7B9(a)(2)(a)(5). Read in combination with *Applewhite*, this provision makes clear that neither the PCA nor § 375 limit the Navy's ability to conduct an off-base investigation for theft of military property.
>
> \* \* \* \* \* \*
>
> The problem with Defendants' argument is that it fails to recognize that military actions may be taken for purposes other than criminal investigations. Military investigative agencies also often act so as to maintain order, security, and discipline on a military reservation. *United States v. Banks*, 539 F.2d 14, 16 (9th Cir.1976).
>
> \* \* \* \* \* \*
>
> The fact that the efforts of civilian law enforcement agencies are enhanced by such activities does not change the independent purpose of the military's activities.
>
> \* \* \* \* \* \*
>
> As recognized by the U.S. Air Force Court of Military Review: The prohibitions contained in the Posse Comitatus Act and in 10 U.S.C. § 375 do not now, nor were they ever intended to, limit military activities whose primary purpose is the furtherance of a military (or foreign affairs) function, regardless of

the benefits which may incidentally accrue to civilian law enforcement. Clearly enforcement of the Uniform Code of Military Justice is one such function and the protection of Department of Defense equipment is another. *United States v. Thompson*, 30 M.J. 570, 573–74 (1990).

> \* \* \* \* \* \*
>
> Only a handful of cases have found investigative activities of the military to violate the PCA. In those cases, the typical problems have been the military's involvement in drug investigations entirely unconnected to military personnel or activities on military bases. *See, e.g., State v. Pattioay*, 78 Hawai'i 455, 896 P.2d 911 (1995); *Taylor v. State*, 645 P.2d 522 (Okla.Crim.App.1982). This case is easily distinguishable.

*Kapule*, No. 97–01189, slip op. at 5–7 (internal quotation marks omitted).

The Court finds that Agents Moran and Rzepka were involved in the investigation due to legitimate military concerns. Specifically, Agents Moran and Rzepka had a legitimate interest in the on-base distribution of the LSD which was provided by Defendant to Lake, and they were concerned with the need to maintain order and security on the base.

### III. *Lake's Participation Does Not Implicate the Posse Comitatus Act or Section 375*

■ The government next argues that Benjamin Lake's cooperation in the investigation of Defendant likewise did not violate the Posse Comitatus Act or Section 375, because Lake acted as a private citizen in the investigation and did not assume any greater authority than that of a private citizen. The Court agrees.

In a case similar to the one at bar, the Supreme Court of Michigan found no violation of the Posse Comitatus Act where an active duty military member cooperated in a civilian undercover narcotics investigation. *See People v. Burden*, 411 Mich. 56, 303 N.W.2d 444 (1981). In *Burden*, a

member of the Air Force, Michael Hall, was charged with selling marijuana. To gain leniency in his case, Hall cooperated with Michigan state police and made purchases of controlled substances from civilians. While Hall's commander approved of the cooperation, the court found that Hall's "willingness to cooperate was not induced, required, or ordered by air force officials." *Id.* at 58, 303 N.W.2d 444. The court observed:

> In cooperating with and assisting the civilian police agency, Hall was not acting as a member of the military. He was acting only as a civilian. His military status was merely incidental to and not essential to his involvement with the civilian authorities. He was not in military uniform. He was not acting under military orders. He did not exercise either explicitly or implicitly any military authority. Moreover, Hall was not a regular law enforcement agent of the military, nor does the record suggest that Hall's usefulness to civilian authorities was in any way enhanced by virtue of his being a military man. As we read the record, the assistance rendered by Hall was in no way different from the cooperation which would have been given by a private citizen offered the same opportunity to avoid criminal prosecution. To paraphrase [legislative history of the bill] Hall's character as 'part of the Army or the Air Force' was irrelevant to the assistance he rendered to the civilian authorities.

*Id.* at 61, 303 N.W.2d 444.

Other courts similarly have refused to find a violation of the Posse Comitatus Act or Section 375 where the military member did not assume any greater authority than that of a private citizen in a civilian undercover narcotics investigation. For example, in *State v. Short*, 113 Wash.2d 35, 775 P.2d 458 (1989), the Supreme Court of Washington declined to find a violation of the Posse Comitatus Act or Section 375 where a member of the NIS, in an undercover capacity, purchased cocaine as part of a civilian narcotics investigation. According to the court, the NIS employee "was not a commissioned officer but a civilian hired as an undercover agent. He purchased the alleged cocaine without assuming greater authority than a private citizen in making the purchase." *Id.* at 40, 775 P.2d 458; *see also People v. Taliferro*, 166 Ill.App.3d 861, 865, 117 Ill.Dec. 696, 700, 520 N.E.2d 1047 (1988) (no violation of Posse Comitatus Act where active duty airman bought cocaine in civilian undercover narcotics investigation because airman "participated in a controlled drug purchase in exactly the same manner as any other citizen would participate in such a transaction."); *People v. Wells*, 175 Cal.App.3d 876, 880, 221 Cal.Rptr. 273 (1985) (no violation of Posse Comitatus Act where NIS agents purchased drugs because NIS agents acted only as undercover informants, and military did not subjugate citizenry to exercise of military powers); *Lee v. State*, 513 P.2d 125, 126 (Okla.Crim.App. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974) (no violation of Posse Comitatus Act where undercover agents purchased drugs in investigation because they did not assume any greater authority than that of a private citizen).

The Court similarly finds that the Posse Comitatus Act and Section 375 were not violated in this case. As in the cases cited above, Lake did not act as a member of the military, but instead acted only as a civilian, with his military status being merely incidental to his involvement with the civilian authorities. During his participation, Lake was not in military uniform, did not act under military orders, and did not exercise either explicitly or implicitly any military authority. Moreover, Lake was not a regular law enforcement agent of the U.S. Marine Corps. The assistance rendered by Lake was in no way different than the cooperation which would have been given by a private citizen offered the same opportunity to avoid criminal prosecution. Accordingly, the Court finds that the Posse Comitatus Act and Section 375 were not violated by virtue of Lake's participation.

## IV. *Dismissal of the Charges or Suppression of the Evidence is Not the Proper Remedy for a Violation of the Posse Comitatus Act or Section 375*

■ Even if the Court were to find a violation of the Posse Comitatus Act or Section 375 in this case, it nonetheless concludes that dismissal of the charges or suppression of the evidence is not an appropriate remedy.

The Ninth Circuit addressed this issue in *United States v. Roberts,* 779 F.2d 565, 568 (9th Cir.1986), *cert. denied,* 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986). In *Roberts,* the Ninth Circuit found that Section 375 had been violated where the Navy and Coast Guard boarded, searched, seized, towed, and later destroyed a boat laden with marijuana. Notwithstanding the finding that the Navy violated the act, the Ninth Circuit refused to suppress any evidence or dismiss the indictment. The Ninth Circuit observed:

> Because the Posse Comitatus Act and sections 371–378 of Title 10 embody similar proscriptions against military involvement in civil law enforcement, we consider it significant that courts have uniformly refused to apply the exclusionary rule to evidence seized in violation of the Posse Comitatus Act.... [F]or example, the Fifth Circuit held that the extraordinary remedy of exclusion was inappropriate until such time as "widespread and repeated violations" of the Posse Comitatus Act demonstrated the need for such a remedy.... [W]e ... hold that an exclusionary rule should not be applied to violations of 10 U.S.C. §§ 371–378 until a need to deter future violations is demonstrated.

*Id.*

This Court has also addressed the issue of suppression of evidence or dismissal of charges when the statute has been violat-ed. In *United States v. Rasheed,* the Court held:

> Preliminarily, the Court notes that, as a matter of law, Defendants are not entitled to exclusion of evidence and/or dismissal for violations of § 375. The controlling case law from the Ninth Circuit is clear: violations of 10 U.S.C. § 375 do not warrant exclusion of evidence or dismissal of the indictment.... Since, and before *Roberts* was decided, no Ninth Circuit Cases have applied the exclusionary rule to violations of §§ 371–378. It may be inferred that there is now no such need to deter future violations.... Accordingly, assuming arguendo that the Navy activity in this case violated 10 U.S.C. § 375, exclusion of any evidence or dismissal of the indictment would not be appropriate.

802 F.Supp. 312, 324 (D.Haw.1992); *accord Hayes,* 921 F.2d at 104.

Because Defendant has not "demonstrated the need to deter future violations" of the Posse Comitatus Act or Section 375, the Court finds no reason to depart from its earlier reasoning and that of the Ninth Circuit.[4] Accordingly, even if the Posse Comitatus Act or Section 375 were violated in this case, the Court finds that dismissal of the charges or suppression of the evidence is not warranted.

### CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Dismiss all Charges and to Suppress all Evidence.

IT IS SO ORDERED.

---

**4.** Although Agent Rzepka testified at the hearing that he was involved in roughly one hundred cases in Virginia in which the NCIS was involved in the investigation of a civilian, the circumstances present in those cases was not explored during the hearing and is far from clear. Furthermore, Agent Rzepka testified that he had only been involved in two such cases in Hawaii. Such testimony does not satisfy Defendant's burden.