**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark Steven HITCHCOCK, Defendant–Appellant.**

**No. 00–10251.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 2001

Submission Withdrawn May 16, 2001

Resubmitted Aug. 23, 2001*

Filed Aug. 23, 2001

---

* This appeal was taken under submission following oral argument on May 15, 2001. The next day, the panel issued an order withdrawing submission pending the outcome in *United States v. Antonakeas,* 255 F.3d 714 (9th Cir.2001). *Antonakeas* has since been decided, and we resubmit the case concurrent with the filing of this opinion.

**880**

Sarah Courageous, Honolulu, Hawai'i, for the defendant-appellant.

Steven S. Alm, U.S. Attorney, and Loretta Sheehan, Assistant U.S. Attorney, Honolulu, Hawai'i, for the plaintiff-appellee.

Before: B. FLETCHER, CANBY, and PAEZ, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

We must decide whether military participation in a civilian criminal investigation violated the Posse Comitatus Act or 10 U.S.C. § 375. Because we conclude that the military's participation falls under the "independent military purpose" exception, we affirm the district court's order denying Hitchcock's motion to dismiss the charges against him or to suppress all evidence because of a violation of the Posse Comitatus Act and § 375. We must also decide whether evidence should be suppressed that was gathered under a search warrant obtained and executed on November 16, 1998, but mistakenly dated November 17, 1998, by the magistrate judge. Since we conclude that the search was within the scope of the warrant, we affirm the district court's order denying Hitchcock's motion to suppress the evidence seized at his home. Finally, we must decide whether Hitchcock's sentence violated *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although we conclude that Hitchcock's sentence to a mandatory minimum based on a drug quantity determination by the district court does not violate *Apprendi,* we nevertheless vacate Hitchcock's sentence and remand for resentencing because Hitchcock was sentenced under 21 U.S.C. § 841(b)(1)(B), a provision we have recently held to be facially unconstitutional under *Apprendi.*

### BACKGROUND

After the U.S. Army Criminal Investigation Division (CID) received information that Benjamin Lake, a U.S. Marine stationed in Hawaii, was selling lysergic acid diethylamide (LSD) to other military personnel on his base, it began a joint investigation with the Naval Criminal Investigative Service (NCIS). Lake sold LSD to an undercover CID agent on October 31, 1998 and again on November 13, 1998. After the sale on November 13, NCIS agents

arrested Lake. Lake agreed to cooperate with NCIS agents. He identified the defendant, Mark Hitchcock, as the source of the LSD. Because Hitchcock is a civilian, the lead NCIS agent on the case, Michael Moran, asked the Drug Enforcement Administration (DEA) to join the investigation. The DEA took control of the investigation, assigning Special Agent John Meade as the case agent. Two NCIS agents, Moran and Robert Rzepka, remained involved with the investigation. Under DEA Agent Meade's direction, Lake made two monitored calls to Hitchcock and discussed payment for LSD Lake had previously obtained. The calls were made from the DEA field office and were monitored using DEA equipment. NCIS Agent Rzepka brought Lake to and from the Naval brig so that Lake could make the calls.

On November 14, 1998, Lake met with Hitchcock, paying him for the LSD with DEA funds. On November 16, 1998, at the direction of the DEA, Lake made another monitored call to Hitchcock and ordered more LSD from him. Under DEA supervision, Lake met with Hitchcock later that same day and Hitchcock sold Lake additional LSD. After Lake purchased the LSD, DEA agents arrested Hitchcock and seized the LSD. The DEA sent the seized LSD to the DEA Western Regional Laboratory for analysis.[1] Shortly after Hitchcock's arrest, DEA Agent Meade advised Hitchcock of his *Miranda* rights. Hitchcock waived his rights. NCIS Agents Moran and Rzepka were present at Hitchcock's interrogation. DEA Agent Meade conducted the interrogation, although NCIS Agent Moran also participated.

On November 15, 1998, NCIS Agent Moran conducted surveillance of Hitchcock's home, as did NCIS Agent Rzepka, along with DEA agents, the next day. On the day of Hitchcock's arrest, the DEA obtained a search warrant from a U.S. magistrate judge. After Hitchcock's arrest, DEA agents executed the warrant, searched Hitchcock's house, and seized evidence they discovered. NCIS Agent Rzepka assisted in the search, as did two CID agents who were present. DEA Agent Meade's report of the investigation states that of the ten drug exhibits recovered, four were seized by CID investigators. The search revealed a significant amount of drugs and drug paraphernalia. The DEA sent all of this evidence to the DEA Western Regional Laboratory for analysis.

Hitchcock was charged in a superseding indictment filed on April 21, 1999, with five counts. Count one of the indictment charged Hitchcock with possession with intent to distribute and distribution of "a mixture containing a detectable amount" of LSD, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Counts two and three charged him with possession with intent to distribute and distribution of "one gram or more of a mixture containing a detectable amount" of LSD, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count four charged him with possession with intent to distribute (but not distribution of) "one gram or more of a mixture containing a detectable amount" of LSD, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count five charged Hitchcock with conspiracy to distribute "one gram or more" of LSD, in violation of 21 U.S.C. § 841.[2]

1. CID sent the LSD obtained from Lake on October 31, 1998, and November 13, 1998, to the U.S. Army Criminal Investigation Laboratory in Forest Park, Georgia, for analysis.

2. Count one concerned the LSD Hitchcock sold to Lake on October 31, 1998; count two

the LSD sold on November 13, 1998; count three the LSD sold on November 16, 1998; count four the LSD discovered at Hitchcock's house during the November 16, 1998 search.

With regard to the conspiracy count, the superseding indictment does not state that the

On March 24, 1999, Hitchcock filed a motion seeking to suppress the evidence obtained during the November 16, 1998, search of Hitchcock's house. Hitchcock argued that the search and seizure was conducted without a valid warrant and that no grounds existed to justify a search without a warrant. The search warrant DEA Agent Meade obtained recites that a search of Hitchcock's home is permitted "on or before the tenth (10th) day after the issuance date" of the warrant. Although DEA Agent Meade obtained the warrant on November 16, 1998, the U.S. magistrate judge dated the warrant November 17, 1998. Hitchcock argued that because the warrant was dated November 17, 1998, the search of his home on November 16, 1998 was performed without a valid warrant. The district court found that the magistrate judge had inadvertently written the wrong date and had corrected the date on the return copy of the warrant when DEA Agent Meade brought the error to his attention. Furthermore, the district court found that the officers had a good faith belief that was objectively reasonable that the warrant was valid. The district court therefore denied Hitchcock's motion. Hitchcock appeals from the district court's order denying his motion to suppress.

Hitchcock filed another motion on May 10, 1999, seeking dismissal of all charges against him and suppression of all evidence on the grounds that NCIS and CID participation in the investigation leading to Hitchcock's arrest violated the Posse Comitatus Act (PCA), 18 U.S.C. § 1385,[3] and 10 U.S.C. § 375,[4] both of which generally prohibit military involvement in civilian law enforcement. After hearing oral argument, the district court held that NCIS and CID involvement in the DEA's investigation of Hitchcock did not violate the PCA or § 375 because the military had only rendered "indirect assistance" to civilian law enforcement and such assistance is not prohibited by the acts. *United States v. Hitchcock*, 103 F.Supp.2d 1226, 1229–30 (D.Hawai'i 1999). Alternatively, the court held that the investigation did not violate the acts because the military's participation arose out of "legitimate military concerns." *Id.* at 1230. Hitchcock appeals from the district court's order denying his motion to dismiss or suppress all evidence because of a violation of the PCA and § 375.

Hitchcock entered a conditional guilty plea to all five counts of the superseding indictment on September 17, 1999, reserving the right to appeal the district court's orders denying his motions to dismiss and suppress. He had no plea agreement with the government. While he admitted that the substances identified by the indictment

---

conspiracy in which Hitchcock was alleged to have participated violated the drug conspiracy statute, 21 U.S.C. § 846. However, Hitchcock does not argue that the superseding indictment is defective.

3. The PCA states:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1385.

4. Section 375 states:

The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that any activity (including the provision of any equipment or facility or the assignment or detail of any personnel) under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

10 U.S.C. § 375.

contained a detectable amount of LSD, he did not concede "the actual weight or quality of the drugs," leaving that issue to be contested at sentencing. At the sentencing hearing on May 2, 2000, the government had three forensic chemists testify concerning the quality and weight of the LSD at issue in the indictment. Hitchcock's expert called into question the methods used by the government chemists to identify the LSD. However, Hitchcock's expert admitted that he did not carefully weigh the substance, nor did he analyze its chemical composition. After argument, the court made findings concerning the weight of the LSD:

> The court finds that the government has established by a preponderance of the evidence that the weight of the-that there was LSD as to count one and the weight was .4 grams, as to count two was 1.1 gram, as to count three was 4.3 milligrams pure LSD and 2.0 grams, as to count 4 it was 9.3 milligrams of pure LSD and 3.1 grams weight.

Based on the total amount of LSD found by the court (13.6 milligrams), Hitchcock's base offense level was 12. *See* U.S.S.G. § 2D1.1(c)(14). The probation office's presentence report recommended and the district court awarded a two point downward adjustment for acceptance of responsibility, giving Hitchcock a total offense level of 10. With a criminal history category of II and an offense level of 10, the Sentencing Guidelines prescribe a sentence of eight to fourteen months' imprisonment. U.S.S.G. Ch. 5, Pt. A. However, 21 U.S.C. § 841(b)(1)(B) prescribes a mandatory minimum of five years' imprisonment for

conviction of possession with intent to distribute and distribution of LSD in the amount of "1 gram or more of a mixture or substance containing a detectable amount" of LSD. 21 U.S.C. § 841(b)(1)(B)(v). Since counts two through five involved one gram or more of a mixture containing LSD, the mandatory minimum was implicated. The district court sentenced Hitchcock to five years' imprisonment for each count of the indictment, to be served concurrently.[5] Hitchcock appeals from the district court's sentence, arguing that his sentence to the mandatory minimum under § 841(b)(1)(B) violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the issue of drug quantity was not presented to a jury and found beyond a reasonable doubt.[6]

### DISCUSSION

#### A. Posse Comitatus Act

█ Whether the Navy's involvement in Hitchcock's arrest violated the PCA is a mixed question of fact and law which is primarily legal. *United States v. Roberts*, 779 F.2d 565, 567 (9th Cir.1986). We therefore review de novo the district court's determination of this issue. *Id.*

The PCA prohibits Army and Air Force personnel from participating in civilian law enforcement activities unless otherwise permitted by federal law. 18 U.S.C. § 1385; *supra* note 3. Although the Navy and Marine Corps are not included by name in the PCA, Congress passed legislation requiring the Secretary of Defense to "prescribe such regulations as may be nec-

---

**5.** Count one of the indictment did not involve one gram or more of a mixture containing a detectable amount of LSD. Thus, § 841(b)(1)(B)'s mandatory minimum was not triggered. However, the district court's sentence of five years for this count is well within the twenty-year maximum of 21 U.S.C. § 841(b)(1)(C), the statutory provision specify-

ing punishment without respect to drug quantity.

**6.** The district court had jurisdiction under 18 U.S.C. § 3231. Hitchcock filed a timely notice of appeal. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

essary" to prohibit members of all branches of the military from participating in civilian law enforcement activities as well. 10 U.S.C. § 375; *supra* note 4. Pursuant to this congressional directive, the Secretary of Defense promulgated a Department of Defense (DoD) Directive regulating the cooperation of military personnel with civilian law enforcement officials. DoD Directive 5525.5 (Jan. 15, 1986) (as amended Dec. 20, 1989). The Secretaries of the Navy and Army issued regulations implementing DoD Directive 5525.5. SECNAV Instruction 5820.7B (Mar. 28, 1988); Army Regulation 500–51 (July 1, 1983).

These regulations generally prohibit "direct" military involvement in civilian law enforcement activities but permit "indirect" assistance such as the transfer of information obtained during the normal course of military operations or other actions that "do not subject civilians to [the] use [of] military power that is regulatory, prescriptive, or compulsory." DoD Directive 5525.5 § E4.1.7.2; *see also id.* §§ 4, E4.1.7.[7] The regulations permit an exception to the general prohibition on direct involvement where the military participation is undertaken "for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities." *Id.* § E4.1.2.1; *see United States v. Chon*, 210 F.3d 990, 994 (9th Cir.2000) (recognizing the independent military purpose exception to the prohibition against military involvement in civilian law enforcement activities).

In this case, the district court held that the participation of NCIS and CID agents in the investigation and arrest of Hitchcock and the search of Hitchcock's house and subsequent seizure of evidence did not violate the PCA or § 375 because the military agencies "merely provided indirect assistance to the DEA." *Hitchcock*, 103 F.Supp.2d at 1229. In reaching this conclusion, the district court relied on our opinion in *United States v. Khan*, 35 F.3d 426 (9th Cir.1994). *Khan* set forth three tests for determining whether military involvement in civilian law enforcement constitutes permissible indirect assistance: "[1] The involvement must not constitute the exercise of regulatory, proscriptive, or compulsory military power, [2] must not amount to direct active involvement in the execution of the laws, and [3] must not pervade the activities of civilian authorities." 35 F.3d at 431 (internal quotation marks and citation omitted).[8] The district court held that NCIS and CID involvement constituted indirect assistance under *Khan* because,

> although [NCIS] Agent Moran participated in the interrogation of Defendant, his involvement was extremely minimal, and was limited to questions pertaining to distribution of drugs on a military base. [In addition], while it is true that [NCIS] Agents Moran and Rzepka participated in the surveillance and that Agents Moran and Rzepka, along with two Army CID agents, were present during the search of Defendant's home, all evidence was recovered by the DEA, it was the DEA who was in command of both the surveillance and the search, and it was the DEA who instructed the

---

**7.** Because the Army and Navy regulations track the language of the DoD Directive, we cite only to the DoD Directive.

**8.** The *Khan* court's tests were an interpretation of 32 C.F.R. § 213.10, a regulation that has since been withdrawn. *See* Removal of

Parts, 58 Fed. Reg. 25,776 (Apr. 28, 1993). Section 213.10 embodied a prior version of DoD Directive 5525.5. *See id.* The provisions interpreted by the *Khan* court remain in the current version of the Directive. Thus, *Khan*'s tests remain controlling.

other agents about the extent of their participation.

*Hitchcock*, 103 F.Supp.2d at 1229–30.

■ The district court's conclusion that NCIS and CID involvement in Hitchcock's case did not constitute "direct assistance" under the regulations may have been erroneous. Section E4.1.3 of the DoD Directive explicitly prohibits military personnel from participating in a search or seizure and also prohibits "[u]se of military personnel for surveillance ... or as ... investigators, or interrogators." DoD Directive 5525.5 §§ E4.1.3.2, E4.1.3.4. However, we conclude that participation of military personnel in the DEA's investigation of Hitchcock did not violate the PCA, § 375, or the regulations implementing § 375, because the military's involvement in this case falls within the "independent military purpose" exception, as the district court held in the alternative. *See Hitchcock*, 103 F.Supp.2d at 1230. The regulations implementing § 375 explicitly permit direct assistance in civilian law enforcement "[i]nvestigations and other actions related to enforcement of the Uniform Code of Military Justice (UCMJ)." DoD Directive 5525.5 § E4.1.2.1.1. The UCMJ specifically prohibits military personnel from possessing and distributing LSD. 10 U.S.C. § 912a, art. 112a. It is undisputed that Hitchcock sold LSD to Lake, a U.S. Marine, who was, in turn, selling LSD to other military personnel. NCIS Agent Rzepka specifically testified that NCIS agents were involved in Hitchcock's interrogation in order to determine whether Hitchcock had sold drugs to other military personnel besides Lake. Military participation in Hitchcock's investigation for the purpose of determining the extent to which his LSD was being used and distributed on the military base was justified. The regulations also permit direct assistance in "[i]nvestigations and other actions related to the commander's inherent authority to maintain law and order on a military installation or facility." DoD Directive 5525.5 § E4.1.2.1.3. Hitchcock's protestations notwithstanding, the proposition that the sale of LSD to persons who might use the drug on a military base or sell it to others on the base implicates the maintenance of law and order on a military installation is unassailable.

Because the participation of NCIS and CID agents in the investigation was permissible under the independent military purpose exception, the PCA and § 375 were not violated. Therefore, we affirm the district court's order denying Hitchcock's motion to dismiss the charges against him or to suppress all evidence.

**B. Search Warrant**

■ Hitchcock seeks to suppress the evidence seized pursuant to a misdated search warrant. Hitchcock, the government, and the district court frame the question as whether the agents' reliance on the warrant fell within the "good faith exception" to the exclusionary rule. As we have described it, the good faith exception to the exclusionary rule permits law enforcement officers reasonably to rely on search warrants that are later determined to be invalid: "If the executing officers act in good faith and in reasonable reliance upon a search warrant, evidence which is seized under a facially valid warrant which is later held invalid may be admissible." *United States v. Michaelian*, 803 F.2d 1042, 1046 (9th Cir.1986) (citing *United States v. Leon*, 468 U.S. 897, 926, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984); *Mass. v. Sheppard*, 468 U.S. 981, 988, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)). The good faith exception has no application here, where there is no dispute about the search warrant's validity but only about whether the agents executed the warrant before it was effective. Rather, the issue is whether the search was conducted within the scope of a warrant, though here the issue

is temporal scope whereas in the ordinary case what is at issue are the items for which the search warrant was issued or the places the warrant authorizes to be searched. *See, e.g., United States v. Furrow*, 229 F.3d 805, 816 (9th Cir.2000) (considering whether search of four "outbuildings" was properly within the scope of search warrant), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir.2001) (en banc); *United States v. Rude*, 88 F.3d 1538, 1551–52 (9th Cir.1996) (considering whether seized documents were outside the scope of search warrant).

■ We review de novo whether law enforcement agents exceeded the scope of a search warrant. *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir.1996). Whether a search exceeds the scope of a search warrant is an issue we determine through an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search. *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978) ("In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution."). The subjective state of mind of the officer executing the warrant is not material to our inquiry. *United States v. Ewain*, 88 F.3d 689, 694 (9th Cir.1996) ("A policeman's pure heart does not entitle him to exceed the scope of a search warrant, nor does his ulterior motive bar a search within the scope of the warrant, where the warrant was properly issued.").

■ On November 16, 1998, DEA Agent Meade filed with the district court an application for a search warrant for Hitch-

cock's house. Agent Meade signed the application, as did U.S. Magistrate Judge Yamashita, below a sentence stating that the application was "[s]worn to before me, and subscribed in my presence: November 16, 1998 at Honolulu, Hawaii." Accompanying the application was an affidavit of Agent Meade, also signed by Magistrate Judge Yamashita below a sentence indicating that the affidavit was "[s]ubscribed and sworn to before me this 16th day of November, 1998." The affidavit does not state a date upon which the proposed search was to take place. DEA Agent Maybe executed the warrant on November 16, 1998, and left a copy of the warrant with Hitchcock's mother. The warrant left with Hitchcock's mother was dated November 17, 1998.

The district court found, and Hitchcock does not dispute, that although it was dated November 17, 1998, Magistrate Judge Yamashita signed and gave the warrant to the agents on November 16, 1998. Additionally, the district court also found, and Hitchcock again does not dispute, that when Magistrate Judge Yamashita subsequently learned that he had dated the search warrant November 17, 1998, he corrected the return copy of the warrant to read "November 16, 1998." Finally, Hitchcock points to no evidence in the record, nor can we find any, that would indicate that Magistrate Judge Yamashita had any reason to delay the effective date of the search warrant. *Cf. United States v. Hugoboom*, 112 F.3d 1081, 1085 (10th Cir.1997) ("Many, if not most, search warrants are effective upon issuance and may be executed immediately thereafter."). Indeed, Hitchcock himself characterizes the magistrate judge's dating of the search warrant as "inadvertent."[9]

---

9. The district court found that DEA Agent Meade would not have executed the search warrant had he known that it bore an incorrect date. As Hitchcock points out, it was

DEA Agent Maybe, not Agent Meade, who executed the warrant. Agent Maybe did not testify as to whether he noticed the incorrect

The circumstances surrounding the issuance of the search warrant, the contents of the warrant, and the circumstances surrounding the execution of the warrant indicate that Magistrate Judge Yamashita inadvertently postdated the search warrant by one day. We conclude that where an agent obtains a search warrant from the court and later that day conducts an otherwise valid search, the search is within the scope of the warrant, notwithstanding the fact that the warrant is post-dated by one day, so long as the evidence in the record indicates that the only reason the search warrant was post-dated was the court's inadvertence. Consequently, we affirm the district court's order denying Hitchcock's motion to suppress the evidence seized during the November 16, 1998, search of his home.

## C. Sentencing and *Apprendi*

Hitchcock pled guilty to count one of the indictment, which charged him with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), to counts two through four, which charged him with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and to count five, which charged him with violating 21 U.S.C. § 841(a).[10] 21 U.S.C. § 841(b)(1)(B) prescribes a mandatory minimum sentence of five years' imprisonment for conviction of possession with intent to distribute and distribution of "1 gram or more of a mixture or substance containing a detectable amount" of LSD. By contrast, 21 U.S.C. § 841(b)(1)(C) prescribes a maximum sentence of twenty years' imprisonment, but no mandatory

minimum for possession with intent to distribute and distribution of a mixture or substance containing a detectable amount of LSD, regardless of the quantity involved. In this case, the quantity of the mixture containing LSD was not presented to the jury. Rather, at sentencing, the district court found by a preponderance of evidence that the amount of mixture involved in counts two, three, and four was more than one gram in each case.[11] The court therefore sentenced Hitchcock under § 841(b)(1)(B) to five years' imprisonment for each count, to be served concurrently, notwithstanding the fact that the guideline range for a conviction involving the quantity of drugs found by the district court for a person with Hitchcock's criminal history category is eight to fourteen months' imprisonment.

Hitchcock argues that because the issue of drug quantity was not submitted to a jury and found beyond reasonable doubt, his sentence to the mandatory minimum provision of § 841(b)(1)(B) violates *Apprendi.* *See* 120 S.Ct. at 2362–63 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Hitchock's argument is foreclosed by our precedent. We have held that mandatory minimums do not implicate *Apprendi.* *See United States v. Antonakeas,* 255 F.3d 714, 728 n. 11 (9th Cir.2001); *United States v. Garcia–Sanchez,* 238 F.3d 1200, 1201 (9th Cir. 2001).

date and executed the warrant anyway, as Hitchcock also points out. However, since our inquiry is an objective one, we need not be concerned with the state of mind of the officer who executed the warrant.

**10.** *See supra* note 22.

**11.** The district court found that the amount of mixture in count one of the indictment was .4

grams. The court made no explicit finding as to count five, which charged conspiracy to distribute more than one gram of a mixture containing a detectable amount of LSD. However, the conspiracy statute provides for the same penalty as the substantive offense. 21 U.S.C. § 846.

However, we have recently held that, in light of *Apprendi*, 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B) are facially unconstitutional. *United States v. Buckland*, 259 F.3d 1157 (9th Cir.2001). Because Hitchcock was sentenced under an unconstitutional provision, we vacate his sentence and remand for resentencing under 21 U.S.C. § 841(b)(1)(C), which has no mandatory minimum. It appears Hitchcock has served more than the maximum provided by the applicable guideline range.

### CONCLUSION

The participation of CID and NCIS agents in Hitchcock's investigation was permissible under the "independent military purpose" exception. The search of Hitchcock's home was within the scope of the search warrant, notwithstanding the inadvertent post-dating. For these reasons, we affirm the district court's orders denying Hitchcock's motions to dismiss all charges and suppress evidence. Because Hitchcock was sentenced under an unconstitutional provision, we vacate his sentence and remand for resentencing.

**VACATED AND REMANDED.**