SILVERMAN, Circuit Judge,
joined by CALLAHAN, Circuit Judge,
concurring in the judgment:
I am at a loss to understand what NCIS Agent Steve Logan did wrong here. At the outset, it is important' to note three things:
First, as a Naval criminal investigator, Logan was tasked with looking for Navy personnel who were misusing peer-to-peer software to traffic in child pornography. He was not looking for civilians. Second, peer-to-peer software, by definition, opens up one’s computer to the world. See United States v. Ganoe, 538 F.3d 1117, 1127 (9th Cir.2008).
Third, when Logan discovered that he had stumbled upon a civilian sharing child pornography, he dropped the investigation like a hot potato and did nothing more than turn over his findings to civilian authorities. He had no further involvement whatsoever in the investigation, search, interrogation, or arrest.
In these circumstances, Logan did not violate the Posse Comitatus-like regulations, both because his assistance of civilian law enforcement was “indirect” and because his limited involvement had an *1286 “independent military purpose.” See United States v. Hitchcock, 286 F.3d 1064, 1069-70, amended and superseded by 298 F.3d 1021 (9th Cir.2002). Given that Logan had a right to go on the Internet and look for those who voluntarily choose to share their computer files with strangers — -just as anyone has that right — Logan did nothing that is prohibited, or that even required a warrant! Anyone with the right software can do what Logan did.
This is really no different than Shore Patrol going into a downtown bar that’s open to the general public and looking for misbehaving sailors. The Shore Patrol is not there to enforce local laws, but rather “to maintain order and suppress any unseemly conduct on the part of any” sailor on shore leave. 32 C.F.R. § 700.922(a). If they happen to see a civilian crime taking place in front of them, nothing prohibits them from calling the local police, just as anyone might.
Dreyer argues that Logan violated Navy regulations, but tellingly, that’s not the Navy’s interpretations of its regulations. Logan has not been disciplined for carrying out the investigation or told that he may not continue such investigations. Rather, the United States has argued on the Navy’s behalf that although Logan was conducting an investigation when he discovered Dreyer’s sharing of child pornography, that investigation was permissible both under NCIS’s charter (giving agents authority to “conduct[ ], supervis[e], or coordinate] investigations of criminal activity in programs and operations of the Department of the Navy,” 10 U.S.C. § 7480(b)) and under Department of Defense and Navy regulations. Those regulations permit certain forms of indirect assistance to civilian authorities, see Dep’t of Defense Directive (“DODD”) 5525.5 E4.1.7, SECNAVINST 5820.7C § 8.d., as well as actions with the primary purpose of furthering a military function, such as enforcing the Uniform Code of Military Justice, which prohibits sharing of child pornography. See Article 184, Uniform Code of Military Justice, 10 U.S.C. § 934; DODD 5525.5, E.4.1.2.1.1; SECNAVINST 5820.7C § 8.c.(1). Indeed, the Navy has consistently interpreted its regulations to not prohibit similar conduct that involved only indirect military assistance or had an independent military purpose. See, e.g., Hitchcock, 286 F.3d at 1069-70; United States v. Chon, 210 F.3d 990 (9th Cir.2000) (NCIS agent’s conduct did not violate the PCA because it had an independent military purpose); see also Hayes v. Hawes, 921 F.2d 100, 103-04 (7th Cir.1990) (NCIS agents’ conduct did not violate the PCA where the agents “merely shared information about drug activity ... with the police department, aided the police in surveillance ..., made the undercover buy, and signalled to the police when the transaction was completed”).
Contrary to the majority’s view, the record does not “demonstrate[ ] a poor understanding of the restrictions imposed on NCIS’s involvement in civilian law enforcement.” The Navy’s position that Logan’s investigation did not violate its regulations is consistent with its longstanding administrative practice, reasonable, and deserving of the court’s deference. See, e.g., Lawrence v. McCarthy, 344 F.3d 467, 473 (5th Cir.2003) (deferring to military court interpretations on the basis that they require “interpretation of military forms and standard operating procedures with which we are comparatively less well-versed”). Branches of the military promulgate and administer their own regulations, which the Navy has done here; a reasonable interpretation by the Navy of its own regulation must stand even if there are competing interpretations. See Champagne v. United States, 35 Fed.Cl. 198, 210 (1996), aff'd, 136 F.3d 1300 (Fed.Cir.1998) *1287 (“[W]hen the meaning of military regulations and instructions are at issue, the armed service’s own interpretation must be given controlling weight and deference, especially when it has been consistently interpreted over a long period of time”). As I have emphasized, “[t]he military’s considered professional judgment is not lightly to be overruled by the judiciary.” Meinhold v. U.S. Dep’t of Def., 34 F.3d 1469, 1476 (9th Cir.1994) (internal quotations and citation omitted). The Navy, in declining to discipline Agent Logan for his investigation, has implicitly interpreted the regulations to conclude that the regulation was not violated. That reasonable interpretation deserves the court’s deference.
But even if zero deference were owed to the Navy’s interpretation of its own regulations, I would hold that there was no violation. As sketched out above, when Logan started his investigation, it was solely with the aim of identifying Navy or other military personnel who were sharing child pornography online, in violation of the Uniform Code of Military Justice. Such an investigation is clearly in service of a legitimate Navy interest. Although Logan came upon a civilian, defendant Dreyer, distributing child pornography on a peer-to-peer file sharing service as part of this process, that discovery was not Logan’s aim. Rather, as demonstrated by Logan’s prompt action in turning over the investigation of Dreyer to local civilian law enforcement, his sole purpose was to “further[ ] a military or foreign affairs function of the United States,” DODD 5525.5, E.4.1.2.1; SECNAVINST 5820.7C at 8(c)(1): identifying military service members who are illegally sharing child pornography. Logan had no interest in or jurisdiction over Dreyer’s transgressions, and he did nothing more than bring them to the attention of the relevant civilian authorities, and then wash his hands of the matter. Since Logan’s investigation had this independent military purpose, it did not violate the regulations.
I concur in the judgment affirming the denial of the motion to suppress.