**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Michael Watson CANNON,**
**Defendant–Appellee.**

No. 00–10400.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 17, 2001

Filed Sept. 5, 2001

Robert M. Twiss, Assistant United States Attorney, Sacramento, California, for plaintiff-appellant United States of America.

Karen Landau, Oakland, California, for defendant-appellee Michael Watson Cannon.

Before: SNEED, SILVERMAN, Circuit Judges, and LASNIK,[1] District Judge.

SNEED, Circuit Judge:

The United States appeals the district court's order granting Michael Watson Cannon's motion to suppress evidence seized during the search of his property. Cannon is charged with conspiracy to manufacture, possess with intent to distribute, and distribution of marijuana (Count One), in violation of 21 U.S.C. §§ 846 and 841(a)(1); manufacturing of marijuana (Counts Four and Five), in violation of 21 U.S.C. § 841(a)(1); possession of marijuana with intent to distribute (Counts Six

and Seven), in violation of 21 U.S.C. § 841(a)(1); use of a communication facility in furtherance of drug trafficking (Counts Thirteen and Fourteen), in violation of 21 U.S.C. § 843(b); and criminal forfeiture (Count Twenty), in violation of 21 U.S.C. § 853(a). The district court found that storage rooms connected to a guest house on Cannon's property were not within the house or the curtilage covered by the warrant. We reverse.

## Background

On January 11, 1999, DEA Special Agent Collette drafted an affidavit and a search warrant seeking authorization to search 1250 Hemlock Street in Chico, California, after obtaining incriminating evidence from a cooperating witness concerning the owner of the property, defendant Michael Cannon. Attachment A to the warrant describes the place to be searched as "a double story, single family dwelling, sand wooden structure with brown trim and dark gray composite style roof; further identified by the three inch black numbers '1250' affixed to the house, facing Hemlock street."

The search warrant's Attachment B authorized the seizure of property that included, among other things:

7. Articles of personal property, such as ... vehicles, structures, storage areas, residences or containers where marijuana or evidence may be found.[2]

At the time of the application for the search warrant, Agent Collette knew that there were two structures within the fence that surrounded 1250 Hemlock Street,[3] but

---

1. The Honorable Robert S. Lasnik, District Judge, United States District Court for the Western District of Washington, sitting by designation.

2. That the warrant was poorly drafted cannot be disputed. Structures, storage areas, and

residences are obviously not "articles" that can be seized.

3. This disposition will refer to the two structures as the "main house" and the "rear building."

failed to so inform the magistrate judge because he reasonably assumed that the second structure was a garage. Nevertheless, Collette did not specify the rear building as a place to be searched.

Cannon had converted the rear building from a garage into a self-contained residential unit approximately twenty years earlier. At that time, it was common practice in Chico to convert garages into student-type residences without obtaining the proper building permits. In its records, the City of Chico did not have the rear building registered as a lawful second unit. The rear building at 1250 Hemlock sits directly behind the main house and consists of three areas with separate entrances; one is a dwelling area with a living room, a sleeping deck, and a bathroom. The front door of the dwelling area faces the back side of the main house. The rear building's other two areas are storage rooms, which may only be accessed through doors on the exterior of the building. The first storage room abuts the living room of the dwelling area, and its door is located a few feet from the rear building's front door. The second storage room abuts the sleeping area and kitchen of the dwelling area. The rear building is linked to the main house by a wooden deck.

On January 13, 1999, DEA agents executed the search warrant. After entering the main house and placing Cannon under arrest, the officers searched both the main house and the rear building's dwelling area. Inside the rear dwelling area they discovered a wood-burning stove for heat, kitchen stove, sink, refrigerator, bathroom, and bed. The officers found no incriminating evidence in the dwelling area itself. Next, they exited the rear building and tried the doors to the building's storage rooms. Finding them locked, the officers went inside and asked Cannon for the keys. Upon opening the two storage rooms, the officers found and seized approximately four hundred marijuana plants.

At Cannon's evidentiary hearing on April 18, 2000, Steve Cook testified that he rented the rear building's residential unit from Cannon between August 1998 and February 1999. His period of occupancy included the time of the search warrant in this case. Cook also testified that he used the unit as a part-time living space, and that his rental pertained only to the interior dwelling area in the back building. Cook's rental did not include the two storage rooms where the marijuana was found.

On June 12, 2000, the district court determined that the rear building storage rooms were not within the scope of the warrant obtained by Agent Collette to search 1250 Hemlock Street. Accordingly, the court ordered that the marijuana found in the storage rooms be suppressed. We reverse.

## Standard of Review

 When reviewing a motion to suppress where the question is the scope of the warrant, this court reviews de novo. *United States v. Becker,* 929 F.2d 442, 445 (9th Cir.1991). This court also reviews de novo the district court's factual determination of whether an area falls within the curtilage of a home. *United States v. Johnson,* 256 F.3d 895 (9th Cir.2001).

## Discussion

The Constitution provides protection against unreasonable searches and seizures and provides that no warrant shall issue unless "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. Despite the Constitution's particularity requirement suggesting close construction of the language of a warrant authorizing a

search, the Supreme Court has explained that "affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). "A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Id.* The district court was correct to find that the rear dwelling area that Steve Cook rented from Cannon was outside the scope of the warrant, because Steven Cook had a reasonable expectation of privacy in his home. The two storage rooms, however, were not an extension of Cook's rental unit; rather, they were within the curtilage of the main house for which the officers had a valid warrant. Therefore, the court erred in suppressing the evidence found in the two storage rooms.

■ Because the home "is accorded the full range of Fourth Amendment protections" against unlawful searches and seizures, *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), an unconsented police entry into a residential unit (whether a house, apartment, or hotel room) constitutes a search for which a warrant must be obtained. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While a liberal reading of the warrant is required, when law enforcement wishes to search two houses or two apartments, it must establish probable cause as to each. *United States v. Hinton,* 219 F.2d 324, 326 (7th Cir.1955); *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

## A. Steve Cook's Rental Unit

■ In the evidentiary hearing, the district court found that before executing the warrant on 1250 Hemlock, the DEA agent reasonably believed the rear building to be a garage. When the officers entered the rental unit, however, they realized that it was a place where someone lived.[4] While the living room of the rental unit contained storage boxes, the second room contained appliances associated with a separate dwelling, including a woodburning stove, cooking stove, refrigerator, and sink. The unit also had its own bathroom. The rental unit was clearly a separate dwelling for which a separate warrant was required. *See Steele,* 267 U.S. 498 at 503, 45 S.Ct. 414, 69 L.Ed. 757. It cannot be viewed as an extension of the main house.

■ Similarly, a search of a guest room in a single family home which is rented or used by a third party, and, to the extent that the third party acquires a reasonable expectation of privacy, requires a warrant. *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A reasonable expectation of privacy exists when 1) the individual has sought to preserve something as private, and 2) the person's expectation of privacy is one that society is prepared to recognize as reasonable. *Bond v. United States,* 529 U.S. 334, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000).

Steve Cook possessed a reasonable expectation of privacy in the interior spaces of the rear accessory building where he was a tenant. Neither did the search warrant for 1250 Hemlock describe Cook's rental unit as a place to be searched, nor did the affidavit establish probable cause to search Cook's rooms. Hence, the rooms in the rear building where Cook lived were

---

4. Had the rear building been a detached garage, its search would have been authorized under the warrant for 1250 Hemlock. *See*

*United States v. Gorman,* 104 F.3d 272 (9th Cir.1996).

not within the scope of the warrant for 1250 Hemlock. Any marijuana discovered there would not have been admissible evidence. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

## B. *Storage Rooms*

▉▉▉▉ However, the rear building's storage rooms where the agents discovered marijuana are another matter. Defendant Cannon argues that because the storage rooms were not specifically described in the warrant, they, like Cook's rental unit, were outside the warrant's scope. It follows, Cannon asserts, that evidence found inside them must be suppressed. Cannon's argument fails. The storage rooms were not part of the rental unit; rather, they are curtilage of the main house and within the embrace of the warrant.

▉▉▉ "Curtilage" has been defined as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.' " *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (quoting *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)). For the purposes of the Fourth Amendment, curtilage is important because it expands the constitutional boundaries of the home beyond the four walls of the house. *Johnson,* 256 F.3d at 901; *see also Oliver,* 466 U.S. at 178, 104 S.Ct. 1735 ( "[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home.").

▉▉▉ This court, other circuits, and state courts have held that the Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence.[5] In *United States v. Gorman,* we stated:

> If a search warrant specifying only the residence permits the search of "closets, chests, drawers, and containers" therein where the object searched for might be found, so should it permit the search of similar receptacles located in the outdoor extension of the residence, i.e., the curtilage, such as the container in this case. To hold otherwise would be an exercise in pure form over substance.

*Gorman,* 104 F.3d at 275. A search warrant must be read in a common sense and realistic fashion. The exclusionary rule was designed to deter police misconduct, not objectively reasonable law enforcement activity. Thus, we hold that the failure of the warrant to specifically list the storage rooms as a place to be searched does not, by itself, exclude the storage rooms from the warrant's scope.

The Supreme Court has instructed that in determining whether an area is part of the curtilage of the premises described in a warrant, courts must employ four factors: (1) the area's proximity to the home, (2) whether the area is included within an enclosure surrounding the home, (3) whether the area is being used for the intimate activities of the home, and (4) the steps taken by the resident to protect the area from observation by passers-by. *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

Steve Cook leased the two interior rooms of the rear building at 1250 Hem-

---

**5.** *United States v. Gorman,* 104 F.3d 272, 274 (9th Cir.1996); *see also, e.g., United States v. McCaster,* 193 F.3d 930, 932 (8th Cir.1999), *United States v. Moore,* 743 F.2d 254 (5th Cir.1984), *United States v. Combs,* 468 F.2d 1390 (6th Cir.1972), *Nebraska v. Vicars,* 207 Neb. 325, 299 N.W.2d 421 (1980); *State v. Trapper,* 48 N.C.App. 481, 269 S.E.2d 680(1980), and *State v. Stewart,* 129 Vt. 175, 274 A.2d 500 (1971).

lock. He had a reasonable expectation of privacy in his rental unit's interior spaces. Cook testified, however, that his lease did not include the two storage rooms in question, and that he did not have access to them. He was excluded from the two storage rooms where the marijuana was found, and the marijuana was not his.

Because the storage rooms were in close proximity to Cook's dwelling, the first *Dunn* factor suggests the storage rooms are curtilage of Cook's rental unit. The second factor, however, which asks whether the area is included within an enclosure surrounding the home, weighs no more in favor of viewing the storage rooms as curtilage to Cook's rental than viewing them as curtilage to the main house. The same fence enclosed both the main house and the rear structure where the storage rooms were located. The third and fourth factors, regarding use and visibility, outweigh the proximity factor. Because Cook had no right to access the storage rooms nor knew what they contained, the storage rooms cannot possibly be construed as being used for the intimate activities of his home (*Dunn* factor three). Thus, Cook did not take steps to conceal the storage rooms from passers-by (*Dunn* factor four).

It follows that the storage rooms cannot be viewed as an area to which the sanctity of Cook's home and the privacies of his life extended. *See Oliver*, 466 U.S. at 180, 104 S.Ct. 1735. Therefore, the district court erred in determining that the storage rooms were within the curtilage of Cook's rental.

The issue thus becomes whether the storage rooms were an extension of defendant Cannon's residence. They were located only a few feet from Cannon's back door. They were enclosed by the same fence that encircled the main house. Although growing marijuana is not a use tied to the intimate activities of the main house,

Cannon, who resided in the main house, had exclusive control of the two storage rooms. He possessed the keys to their locks, and used the rooms to grow marijuana that he apparently intended to sell. It was he, not Cook, who expected privacy in the storage rooms. Similarly, with respect to the *Dunn* visibility factor, Cannon protected the storage rooms from the observation of passers-by. He enclosed the entire premises, including the storage rooms, within a privacy fence, placed locks on the storage rooms, and retained control of the keys to those locks. Thus, in light of the *Dunn* factors, the district court erred in concluding that the two storage rooms where marijuana was found were not within the curtilage of the main house at 1250 Hemlock Street.

### Conclusion

A search warrant for a residence may include all other buildings and other objects within the curtilage of that residence, even if not specifically referenced in the search warrant. The entire rear building at 1250 Hemlock qualifies as curtilage of Cannon's residence under a *Dunn* analysis. However, because Steve Cook possessed a reasonable expectation of privacy in the rear building rooms he rented, those spaces exceeded the scope of the search warrant for Cannon's residence.

Cook had no expectation of privacy in the two storage rooms where the DEA discovered marijuana. Cannon did have such an expectation. Therefore, there is no reason to exclude from the curtilage of Cannon's residence the storage rooms where marijuana was found.

The order suppressing evidence found in Cannon's rear building storage rooms is **REVERSED**.