**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ADONIS LATRELL HURD,
          *Defendant-Appellant.*

No. 06-30592

D.C. No.
CR-05-00404-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
July 12, 2007—Portland, Oregon

Filed August 24, 2007

Before: Alfred T. Goodwin, Stephen Reinhardt, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

10507

**COUNSEL**

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, for the defendant-appellant.

John C. Laing, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

In this appeal we consider the constitutionality of a search of a defendant's residence pursuant to a search warrant signed by a judge who initialed portions of the search warrant describing the person and automobile of the defendant, but failed due to an "oversight" to initial the portion of the search warrant describing the defendant's residence. Because an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the warrant, and the circumstances of the search clearly indicates that the residence was within the authorized scope of the warrant, we hold that the search of the residence was constitutional. We find no error in the district court's denial of the defendant's motion to suppress. *See United States v. Hitchcock*, 286 F.3d 1064, 1071-72 (9th Cir.), *as amended by* 298 F.3d 1021 (9th Cir. 2002).

## I.   Background and Prior Proceedings

Based on police investigations and surveillance, including at least three instances in which Adonis Latrell Hurd sold crack cocaine to undercover officers, Portland Police Officer Brad Clifton prepared a search warrant application and a supporting affidavit requesting a warrant to search Hurd, his vehicle, and his residence for evidence of drug trafficking. Officer Clifton selected a warrant form from the police department computer with which he was not familiar, and which, when filled in, contained three distinct paragraphs describing the person and places to be searched. The first paragraph described Hurd's person, the second described his residence, and the third described his vehicle. Each of these paragraphs was preceded by a short blank line. Before going to a judge, Officer Clifton reviewed the warrant application and affidavit with a police supervisor and a deputy district

attorney, both of whom agreed that the evidence justified a request to search Hurd, his vehicle, and his residence.

On September 9, 2005, at approximately 5:20 p.m., Officer Clifton presented the search warrant and the accompanying affidavit to Multnomah County Circuit Judge Paula J. Kurshner. Because it was after hours, Officer Clifton met with Judge Kurshner at her home. After placing Officer Clifton under oath, Judge Kurshner reviewed the affidavit with Officer Clifton before having him sign it to affirm the truth of its contents. Judge Kurshner then affixed the date, time, her signature, and her handwritten name to the affidavit.

Judge Kurshner then signed the search warrant. In light of the testimony of Officer Clifton and Judge Kurshner at the suppression hearing, the district court determined that Judge Kurshner told Officer Clifton that "his warrant request was 'fine' (or words to that effect)" as she signed the warrant. *United States v. Hurd*, 427 F. Supp. 2d 984, 986 (D. Or. 2006). In addition to signing the warrant and checking the space allowing for ten-day return service, Judge Kurshner placed her initials on the blank lines immediately preceding the paragraphs describing Hurd and his vehicle, but she did not initial the blank preceding the description of Hurd's residence.[1]

On September 15, 2005, police officers stopped and searched Hurd and his vehicle pursuant to the search warrant. Officer Clifton read the entire search warrant to Hurd, including the portion that Officer Clifton believed authorized the search of the residence. The officers later went to the residence described in the second paragraph of the search warrant

---

[1]As discussed at greater length below, Judge Kurshner testified at the suppression hearing, and the district court subsequently found, that her failure to initial the blank line preceding the description of Hurd's residence was "an oversight" rather than an indication that she did not authorize the search of the residence. *Hurd*, 427 F. Supp. 2d at 986, 989.

and forced entry because no one was at home. After the officers secured the residence, Nakia Clay, an occupant of the residence, arrived at the scene. Officer Clifton read the entire search warrant to Ms. Clay, stating that the warrant authorized the search of the residence. Although the searches of Hurd's person and his vehicle failed to produce any useful evidence, the search of the residence resulted in the seizure of crack cocaine, a scale, and over $3,000 in cash.

Based on the evidence seized during the search of the residence, Hurd was charged with possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a), (b)(1)(A). Hurd then filed a motion to suppress the seized evidence alleging that the search warrant did not authorize the officers to search the residence. In denying Hurd's motion to suppress, the district court did not address whether the search of Hurd's residence was within the scope of the warrant. *See Hurd*, 427 F. Supp. 2d at 989. Instead, the district court concluded that even if the search went beyond the scope of the warrant, the exclusionary rule should not be applied in this case based on the balancing test set forth in *United States v. Luk*, 859 F.2d 667, 675 (9th Cir. 1988), and employed in *United States v. Sears*, 411 F.3d 1124, 1128 (9th Cir. 2005). *Hurd*, 427 F. Supp. 2d at 989-90.[2]

After the denial of his motion to suppress, Hurd entered a conditional guilty plea to the amended indictment charging the drug quantity listed in 21 U.S.C. § 841(b)(1)(B)(iii). In his plea agreement, Hurd specifically reserved the right to appeal the denial of his motion to suppress.

---

[2]The *Luk*/*Sears* test balances three factors: "(1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error." *Sears*, 411 F.3d at 1128 (quoting *Luk*, 859 F.2d at 675).

We affirm the district court's denial of the motion to suppress on the ground that the residence was within the scope of the warrant, and, therefore, that the search of the residence was constitutional and the evidence discovered therein was properly admissible. Accordingly, we do not reach the applicability of *Luk*/*Sears* to the facts of this case.

## II.   Standard of Review and Jurisdiction

Whether a search is within the scope of a warrant is a question of law subject to de novo review. *United States v. Cannon*, 264 F.3d 875, 878 (9th Cir. 2001). We review the district court's factual findings for clear error. *United States v. Howard*, 447 F.3d 1257, 1262 n.4 (9th Cir. 2006).

The district court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

## III.   Discussion

Under the Fourth Amendment, "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Hurd does not dispute that Officer Clifton's signed affidavit provided probable cause to search Hurd's person, his vehicle, and his residence. Nor does he dispute the particularity of the description of the places to be searched or the things to be seized.[3] Hurd merely argues

---

[3]Although Hurd argues in his brief that the search of his residence violated the "particularity" requirement, he asserts that argument only as part of his overarching claim that the issuing judge failed to authorize the search of the residence rather than as a separate challenge to the adequacy of the description of the places to be searched or the items to be seized. *See Groh v. Ramirez*, 540 U.S. 551, 558 (2004). Hurd does not challenge the sufficiency of the descriptions in the warrant; he only argues that Judge Kurshner did not authorize the search of the residence and thus the officers' search went beyond the scope of the search warrant that issued for his person and his vehicle.

that Judge Kurshner never authorized the search of the residence and thus a search warrant for the residence did not "issue."

[1] A search is unreasonable under the Fourth Amendment, and thus unconstitutional, if it is performed without proper judicial authorization. *See Groh v. Ramirez*, 540 U.S. 551, 562-63 (2004); *McDonald v. United States*, 335 U.S. 451, 453 (1948). Suppression is generally the proper remedy when the police go beyond the scope of an authorized search warrant by searching places or seizing evidence not included in the warrant. *See United States v. Mittelman*, 999 F.2d 440, 445 (9th Cir. 1993) (holding that "the district court should determine what evidence, if any, was seized in violation of the warrant and order suppression of that evidence"); *United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992) ("Ordinarily, only evidence that is obtained in violation of a warrant is suppressed."); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985) (holding that "those items which fall outside the scope of the warrant need be suppressed"). To determine whether the search of a specific location is within the scope of a valid warrant, we look to the *Hitchcock* test: "Whether a search exceeds the scope of a search warrant is an issue we determine through an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search." *Hitchcock*, 286 F.3d at 1071.

### A. Circumstances surrounding the issuance of the warrant

To determine whether the search of Hurd's residence was within the scope of the warrant, we first conduct "an objective assessment of the circumstances surrounding the issuance of the warrant . . . ." *Hitchcock*, 286 F.3d at 1071.

Officer Clifton applied for a warrant authorizing the search of Hurd's person, his residence, and his vehicle. In support of

the warrant application, Officer Clifton submitted a sworn affidavit setting forth probable cause for the search of the residence described in the warrant.[4] Officer Clifton notes in the affidavit that he and other officers witnessed Hurd on multiple occasions drive to the residence described in the warrant, enter the apartment, and then return to his vehicle and immediately proceed to the site where he sold drugs to a police informant. Following these transactions, Hurd would return to the residence described in the warrant. The affidavit also notes that Hurd's personal information in the police data system lists the apartment described in the warrant as his permanent residence.

[2] When Officer Clifton presented this affidavit and the search warrant to Judge Kurshner at her home, the judge placed Officer Clifton under oath and reviewed the affidavit. She then instructed Officer Clifton to sign the affidavit and she also signed it herself. Judge Kurshner did not ask any questions about the information in the affidavit or the request to search Hurd, his residence, and his vehicle. She did not give any indication that probable cause only supported part of the requested search warrant, nor did she give any indication that there were any other problems with the warrant request. To the contrary, Judge Kurshner told Officer Clifton that "his warrant request was 'fine' (or words to that effect)" before signing the search warrant itself. Judge Kurshner signed the warrant promptly after reviewing and signing Officer Clifton's affidavit, and that affidavit indisputably described the probable cause for searching Hurd's residence. It is likely that if Judge Kurshner did not intend to authorize the search of Hurd's residence, she would have done something to call Officer Clifton's attention to whatever deficiency she found in the warrant request and she would not have simply indicated her approval of the warrant. An objective assessment of the circumstances surrounding the issuance of the warrant

---

[4]Hurd does not dispute that the affidavit sets forth probable cause to search his residence.

thus supports the conclusion that Judge Kurshner authorized the search of Hurd's residence along with the search of his person and his vehicle.

## B.    Contents of the search warrant

We next consider "the contents of the search warrant . . . ." *Hitchcock*, 286 F.3d at 1071.

The face of the search warrant contains three paragraphs describing what was to be searched. The first describes Hurd's person, the second describes his residence, and the third describes his vehicle. The residence is described in detail:

> The residence and curtilage at 3644 Southeast 88th Avenue apartment A, in the City of Portland, Multnomah County, Oregon. The residence at 3644 Southeast 88th Avenue apartment A, Portland, Multnomah County, is within the Spring Garden Apartments, located at the south end of SE 88th Avenue, south of SE Lafayette Street. The apartment is within a two story apartment building located on the west side of the apartment complex. The building is yellow in color with white trim and red brick accents. The numbers "3644", black in color, are set into the brick on a post to the right of the front door. Apartment A is at the south end of the building. The front door, green in color, faces east. The letter "A", gold in color, is posted on the front door at eye level. The residence at 3644 SE 88th Avenue, apartment A is within the City of Portland, County of Multnomah, State of Oregon.

A short blank line immediately precedes the paragraph describing Hurd's residence as well as the paragraphs describing Hurd's person and his vehicle. Judge Kurshner initialed the lines next to the first and third paragraphs (describing

Hurd's person and vehicle), but not the line next to the second paragraph (describing Hurd's residence). The search warrant also contains two paragraphs that specifically describe the items to be seized, including crack cocaine, drug paraphernalia such as razor blades and scales, and cash. Judge Kurshner's signature appears at the end of the warrant.

**[3]** Hurd argues that Judge Kurshner's initials next to the paragraphs describing Hurd's person and his vehicle, and the absence of her initials next to the paragraph describing Hurd's residence, indicate that the judge only authorized a search of the person and the vehicle, but not the residence. We find that an objective assessment of the contents of the warrant does not lead to this conclusion. Because a neutral and detached judge signed the warrant, and because that warrant was supported by a sworn affidavit clearly establishing probable cause and describing with particularity the places to be searched and the items to be seized, it met all of the constitutional requirements for a valid search warrant. U.S. Const. amend. IV. Judge Kurshner's words and actions as she examined and signed the warrant indicate that her failure to initial the description of Hurd's residence was a minor technical error rather than evidence of a constitutional deficiency in the contents of the search warrant. This assessment is buttressed by Judge Kurshner's testimony at the suppression hearing that her failure to initial the blank line next to the paragraph describing the residence was merely an "oversight" rather than an indication that she did not authorize the search of the residence. She also noted at the suppression hearing that she normally crosses out any deficient portions of a search warrant before signing her name at the end of the document. In this case, Judge Kurshner left the entire warrant intact, including the paragraph describing Hurd's residence. Thus, an objective assessment of the contents of the search warrant also indicates that the warrant was lawfully authorized, and that Hurd's residence was within its scope.

### C.    Circumstances of the search

Finally, we consider "the circumstances of the search" to determine whether Hurd's residence was within the scope of the warrant. *Hitchcock*, 286 F.3d at 1071.

On September 15, 2005, Officer Clifton executed the search warrant with the help of other officers. They stopped and searched Hurd and his vehicle, and Officer Clifton read the entire search warrant to Hurd, including the portion describing Hurd's residence. Later that day, the officers went to the residence described in the warrant and forced entry because no one was at home. At the residence, Officer Clifton read the entire search warrant to Ms. Clay, an occupant of the apartment who arrived at the scene shortly after the police. Officer Clifton stated that the warrant authorized the search of the residence.[5]

[4] Hurd does not allege, nor does the record indicate, that the officers committed any procedural misconduct during the search. They confined their search to the specific locations described in the warrant. Officer Clifton kept a detailed record of the seized evidence, all of which was listed among the items authorized for seizure in the warrant. The day after the search, Officer Clifton properly returned the warrant to Judge Douglas G. Beckman, in Judge Kurshner's absence. On the "Return of Search Warrant" form, Officer Clifton openly stated that the search included the residence as described in the warrant. Neither Judge Beckman nor Judge Kurshner ever

---

[5]The district court found that Officer Clifton did not notice the absence of Judge Kurshner's initials on the blank line next to the paragraph describing the residence when he read the warrant aloud to Hurd and Ms. Clay. We do not address the legitimacy of this finding because "our inquiry is an objective one, [and so] we need not be concerned with the state of mind of the officer who executed the warrant." *Hitchcock*, 286 F.3d at 1072 n.9; *see also United States v. Ewain*, 88 F.3d 689, 694 (9th Cir. 1996) (holding that an officer's subjective intent is irrelevant to the determination of whether a search is within the scope of a warrant).

told Officer Clifton, or anyone else, that the officers had gone beyond the scope of the warrant by searching the residence.

**[5]** In sum, "[t]he circumstances surrounding the issuance of the search warrant, the contents of the warrant, and the circumstances surrounding the execution of the warrant" all suggest that the search of Hurd's residence was within the scope of the search authorized by Judge Kurshner. *Hitchcock*, 286 F.3d at 1072. The only evidence to the contrary is the absence of Judge Kurshner's initials from the blank line next to the paragraph describing Hurd's residence. In light of all the relevant objective factors, most importantly the nature of Officer Clifton's interaction with Judge Kurshner and her affirmative statement that the warrant was fine, "the record indicates that the only reason the search warrant [lacked Judge Kurshner's initials] was the court's inadvertence." *Id.*; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested.").

**[6]** Accordingly, we hold that it was objectively reasonable for Officer Clifton to believe that Judge Kurshner authorized the search of Hurd's residence, despite her failure to initial the appropriate line on the search warrant.[6]

---

[6]Hurd argues that we would create an inter-circuit conflict with *United States v. Angelos*, 433 F.3d 738 (10th Cir. 2006), by finding that the search of the residence was within the scope of the warrant in this case. However, *Angelos* is readily distinguishable. Most notably, in that case (1) the search warrant did not include the same locations that were described in the supporting affidavit, (2) the officers searched a location that was not described anywhere on the face of the warrant, and (3) the issuing judge did not give an affirmative indication that the location in question was within the scope of the warrant. *Angelos*, 433 F.3d at 743-45.

## IV.   Conclusion

We conclude that the search of Hurd's residence was within the scope of a properly authorized warrant and we affirm the district court's denial of Hurd's motion to suppress.

**AFFIRMED.**