**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50278 |
| Plaintiff - Appellant, | D.C. No. 2:12-cr-01101-MMM-1 |
| v. | |
| EDWARD HUGH ROBINSON, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted February 5, 2015
Pasadena, California

Before: PREGERSON and NGUYEN, Circuit Judges and CARR,[**] Senior District
Judge.

 The United States appeals the district court's order granting Edward

Robinson's motion to suppress evidence of three firearms found during a search of

Robinson's residence located in a separate building—a free-standing garage

---

 [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

 [**] The Honorable James G. Carr, Senior District Judge for the U.S.
District Court for the Northern District of Ohio, sitting by designation.

converted into a two-bedroom unit with a kitchen and a bathroom. The search of Robinson's residence took place after a search warrant was executed on the separate residence of Abelino Garcia, who owned a unit at the back of a duplex. The front unit of the duplex is not involved in this matter. We have jurisdiction under 18 U.S.C. § 3731. We affirm.

We review the lawfulness of a search and seizure de novo, and the district court's findings of fact for clear error. *United States v. Deemer*, 354 F.3d 1130, 1132 (9th Cir. 2004). We review the scope of a search warrant de novo. *United States v. Hurd*, 499 F.3d 963, 965 (9th Cir. 2007).

"[T]he Fourth Amendment confines an officer executing a search warrant strictly within the bounds set by the warrant . . . ." *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 407 n.7 (1971). Applying *United States v. Hitchcock*, we hold that considering "the circumstances of the search," the search of Robinson's separate residence was beyond the scope of the search warrant. 286 F.3d 1064, 1071 (9th Cir. 2002), *as amended*, 298 F.3d 1021 (9th Cir. 2002).

The search of Robinson's residence is within the scope of the search warrant only if the separate building falls within one of the three categories explicitly offered by the search warrant: (1) the "associated garages" of the Garcia residence;

2

(2) the Garcia residence itself; or (3) the Garcia residence's curtilage.[1]

## A.  Robinson's residence was not a garage

The government argues that the photographs of the separate building and officers' declarations demonstrate that "the garage was a garage" despite the car door being sealed and the separate building's interior containing a two-bedroom, one-bathroom apartment with a kitchen.  We agree with the district court that the "obvious visual signs" demonstrated "immediately upon entry" that the separate building was not a garage, but a residence.

A separate garage's conversion into a living residence is not a novel concept. *See United States v. Cannon*, 264 F.3d 875, 878 (9th Cir. 2001).  In *Cannon*, the court held that a Drug Enforcement Administration search of a separate, converted garage at the rear of a residence, believed to be a garage when the warrant issued, was not within the scope of the search warrant concerning the residence described in that warrant.  *Id*. at 879.  The *Cannon* court found that the appliances associated with a separate dwelling (i.e., a refrigerator, sink, cooking stove, and woodburning stove) observed upon entering the converted garage, along with a reasonable

---

[1] During oral argument, the government acknowledged that it did not argue in the district court that the separate building fell within the Garcia's residence's curtilage.  We therefore do not address this issue because it is waived.  *See Campbell v. Burt*, 141 F.3d 927, 931 (9th Cir. 1998).

3

expectation of privacy that stems from renting a converted garage, established that the converted garage was a separate residence necessitating a separate search warrant. *Id*. *Cannon* is binding precedent and its rationale is persuasive in this case. *See Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir. 2005) (en banc).

The court "must judge the constitutionality of [an officer's] conduct in light of the information available to them at the time they acted." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987). The search warrant's supporting affidavit reveals that law enforcement observed Garcia at his residence numerous times between July 15, 2012 and October 17, 2012. Investigators observed Garcia "entering/exiting the residence on a regular basis in excess of 10 times." The photographs in the record show that the separate building's front was completely covered by white siding and that this condition was obvious. Therefore, during each of law enforcement's numerous observations of Garcia's entries and exits into his residence over three months, the sealed front of the separate building must have been visible to a reasonably observant officer. The officers could not have reasonably believed the separate building was a garage without further investigation.

Moreover, internal wall partitions, a tile floor, and a small kitchen area were visible to the officers upon entry into the separate building. At that point, it would

4

have been apparent to a reasonable officer that this building was not an "associated garage[]" covered by the warrant, but rather was a separate residence. *See Cannon*, 264 F.3d at 879.

## B.  Robinson's residence was not part of Garcia's main residence

Considering the government's argument that the separate building was within the scope of the search warrant as part of Garcia's main residence, we review the facts before the district court to determine if the district court clearly erred in deciding that the separate building was not part of the main Garcia residence.  *Deemer*, 354 F.3d at 1132.  While some facts support the government's assertion that the separate building was part of the main residence, the record contains evidence that the interior of the separate building was conspicuously modified to be used as a separate apartment, and Garcia proffered testimony that he told the officers at the time that the warrant was executed that his "son and tenant are living in the back unit." Considering these competing facts, the district court did not clearly err in finding that the separate building was not part of Garcia's residence.

Our review confirms that the separate building was not part of Garcia's main residence but was instead a separate and independent residence and was therefore not covered by the portion of the warrant authorizing a search of Garcia's main

5

residence. *See Cannon*, 264 F.3d at 879 ("The rental unit was clearly a separate dwelling for which a separate warrant was required. . . . It cannot be viewed as an extension of the main house."). The ease with which officers can obtain a search warrant is also worth noting. *Steagald v. United States*, 451 U.S. 204, 222 (1981) ("In routine search cases . . . the short time required to obtain a search warrant from a magistrate will seldom hinder efforts . . . if a magistrate is not nearby, a telephonic search warrant can usually be obtained.").

C. The protective sweep and "single purpose" exception

In the alternative, the government seeks to admit the firearms into evidence because law enforcement discovered the firearms during a protective sweep of the separate building. Though *Maryland v. Buie* permits a protective sweep of a space when "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger," the three firearms subject to suppression in this case were not discovered during the protective sweep. 494 U.S. 325, 334 (1990). Rather, officers discovered two of the firearms *after* the protective sweep when conducting the full search of Robinson's bedroom. The officers found the third firearm after opening an unmarked black case discovered in Robinson's bedroom. We therefore need not address whether these facts permit

6

the admission of evidence found during a protective sweep of the separate building under *Buie* because the officers did not find the disputed evidence during the protective sweep.

Lastly, we reject the government's argument that the "single-purpose" exception applies to law enforcement's opening of the black case discovered in Robinson's bedroom during the protective sweep. *See Arkansas v. Sanders*, 442 U.S. 753, 764 n.13 (1979), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). The "single-purpose" exception applies to a container when the government can show that its contents are "susceptible to ready identification by the general public," without reliance on the special expertise of law enforcement officers. *United States v. Gust*, 405 F.3d 797, 804 (9th Cir. 2005). A complete examination of the record reveals that the government did not meet that burden.

For these reasons, the district court properly suppressed the three firearms.

**AFFIRMED.**