Filed 1/23/14  P. v. Zepeda CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ZEFERINO ZEPEDA,<br><br>    Defendant and Appellant. | F065978<br><br>(Merced Super. Ct.<br>No. CRM005449B)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Alison E. Kaylor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant/defendant Zeferino Zepeda pleaded no contest to possession for sale of cocaine (Health & Saf. Code, § 11351) and admitted a prior strike allegation. He was sentenced to the midterm of eight years. He was arrested when officers executed a search warrant at a residence where Ryan Oneal Sullivan (Sullivan) had sold methamphetamine to an informant. Defendant was not involved in the transaction, and the officers did not know of his existence on the premises. The warrant authorized the officers to search Sullivan, his residence, anyone present who was associated with the property, and any garages, sheds, or outbuildings. The officers entered a detached structure next to the residence because they believed it was an outbuilding authorized by the warrant. They found defendant trying to flush large quantities of methamphetamine down a toilet. The officers later learned defendant was living in the outbuilding.

Defendant filed a motion to quash the search warrant and argued the affidavit filed in support of the warrant failed to set forth probable cause to search the outbuilding because it was his separate residence. Defendant also filed a motion to suppress evidence and argued the officers exceeded the scope of the warrant because it did not authorize the search of his residence. The superior court denied both motions.

On appeal, defendant renews the arguments he made in superior court and argues his motions to quash and suppress should have been granted. We affirm.

## FACTS

### The affidavit

On or about October 26, 2009, California Highway Patrol Officer Ronald Gonzales, who was assigned to the Merced Multi-Agency Narcotic Task Force, filed a sworn affidavit with the Merced County Superior Court to request a search warrant for 20200 Fourth Street, Hilmar, in Merced County.

In the affidavit, Gonzales declared that within the prior 15 days, the agents on the task force used a confidential reliable informant to conduct a controlled purchase of 0.4

2.

grams of methamphetamine from Sullivan at a residence located at 20200 Fourth Street. The informant knocked on the front door and entered the residence. Within a few minutes, the informant walked out of the residence. The informant met with the agents, turned over a plastic bag of methamphetamine, and reported Sullivan sold the methamphetamine to him.

According to Officer Gonzales's affidavit, the informant reported Sullivan worked at a recycling center and sold methamphetamine from that location. Gonzales determined that within the past 10 days, Sullivan was still working at the recycling center, and the informant reported Sullivan was still selling methamphetamine. The informant called Sullivan, and the informant was told he/she could buy additional methamphetamine from him.

In the affidavit, Officer Gonzales cited to his own experience and knowledge of narcotics activities, and relied on the informant's information to request a warrant to search 20200 Fourth Street, Sullivan's person, any and all vehicles found on the premises and associated with persons present during service of the warrant, and any person found on the premises during the service of the warrant, for methamphetamine and evidence commonly associated with the use, packaging, and sale of methamphetamine, including telephones, ledgers, and financial records.

In the affidavit, Officer Gonzales did not specifically discuss the existence of any outbuildings or garages at 20200 Fourth Street, or request to include the search of such structures in the warrant. However, Gonzales declared:

> "Your Affiant is aware that evidence is required to show the identity of the person or persons *in control of the premises or any storage facilities*. Your Affiant has learned that possession of keys to the locks or padlocks on the property will show access and control and that paperwork or documents including photos, utility company receipts, telephone bills, rental agreements and deeds to the property will show control and occupancy, therefore your Affiant requests to seize these items." (Italics added.)

3.

**The search warrant**

On the same date, the court issued a search warrant for 20200 Fourth Street, Hilmar, in Merced County. The warrant described the premises as:

"[A] white stucco one story multiple room residence with white trim. The numbers '20200' are in black on a post in front of the residence. The residence is on the north side of Fourth Street. The main entrance door to the residence faces south."

The warrant authorized the search of the residence, any persons found on the premises found to be associated with the premises, any vehicles found on and associated with the premises, and the following:

"[A]ny *out buildings, garage, sheds, or other structures* found to be associated with the premises." (Italics added.)

The warrant authorized the seizure of narcotics, financial records, paraphernalia, packaging materials, and other evidence relating to the possession, use, and sales of narcotics.

## THE SEARCH[1]

At 10:30 a.m. on October 28, 2009, Officer Gonzales and other officers from his team executed the search warrant at 20200 Fourth Street. Gonzales testified the officers entered the residence and encountered Sullivan and Hannah Rochelle Steen. Sullivan was found in possession of a digital scale commonly used to weigh narcotics. The officers found packaging materials in the house. There were 0.8 grams of possible marijuana in Steen's purse.

**Search of the "outbuilding"**

Officer Gonzales testified that after they secured Sullivan and Steen in the residence, the officers went to "what appeared to be an outbuilding" on the premises to

---

**[1]** The following facts about the search are from the preliminary hearing. We will discuss the evidence from the suppression hearing below.

secure and clear it. The outbuilding was separate and detached, and about five feet away from the residence. Officer Gonzales testified that in his opinion, the outbuilding "was at one time … like, a washroom or it could have even been a shop."

Officer Gonzales testified there was not a street number on the outbuilding. When he approached the structure, he did not consider it to be a residence and believed it was subject to the warrant's provisions to search any "outbuildings, garage, sheds, or other structures found to be associated with the premises;..."

An officer gave knock/notice on the outbuilding's door. No one responded, and they made forced entry into the outbuilding. Officer Gonzales testified they would have performed knock/notice entry "even if it was a barn," and not because they believed it was a residence.[2]

Officer Gonzales testified they found defendant inside the outbuilding. He was in a bathroom and trying to flush items down a toilet. The officers tried to stop defendant, he resisted, and a struggle ensued. The officers used a Taser and force to restrain defendant.

Despite defendant's efforts, the toilet did not completely flush or drain the items which defendant tried to destroy. The officers recovered several bags of suspected narcotics from the toilet basin. There were eight bags of suspected methamphetamine that weighed a total of 160.8 grams. There was one bag of suspected cocaine that weighed 30.2 grams.

The officers searched the outbuilding pursuant to the warrant, and found a video surveillance monitor and camera that showed the entrance; $4,501 in cash; a total of

---

[2] Knock-notice requirements are applicable to certain detached buildings on residential property since they are viewed as part of the "house" to which knock-notice is required. (See, e.g., *People v. Bruce* (1975) 49 Cal.App.3d 580, 585-587.)

5.

2,021.2 grams of marijuana in various jars and bags; digital scales, glass pipes; and packaging materials.

A Blackberry cell phone was also found in the outbuilding. It contained text messages asking about purchase prices for certain drugs. The officers later determined the cell phone belonged to defendant.

Officer Gonzales testified that in addition to the toilet, the outbuilding contained a kitchen area with a stove and a sink; and a sleeping area with a mattress and sleeping bags on the floor. There was another person present, Krista Ann Kelso who was lying on the mattress. Gonzales testified "[s]omebody was staying" in the structure. Gonzales conceded he described the outbuilding as a "detached house" in his final report about the execution of the warrant.

Defendant was advised of the *Miranda*[3] warnings and initially agreed to give a statement. He asked what he was being charged with, and he was told possession of methamphetamine, cocaine, and marijuana; possession for sale; and resisting arrest. Defendant said he panicked when he heard a knock at the door, and he grabbed a shoe box and threw the contents into the toilet. Defendant then asked for an attorney.

Sullivan was also advised of the *Miranda* warnings, agreed to answer questions, and said he did not know anything about the drugs.

**The charges**

Defendant was charged with count I, possession for sale of methamphetamine (Health & Saf. Code, § 11378), with a prior drug-related conviction (Health & Saf. Code, § 11370.2, subd. (c)); count II, possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); count III, possession of marijuana for sale (Health & Saf. Code, § 11359); count IV, misdemeanor possession of more than 28.5 grams of marijuana

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*)

(Health & Saf. Code, § 11357, subd. (c)); count V, possession for sale of cocaine (Health & Saf. Code, § 11351), with a prior drug-related conviction; count VI, possession of cocaine (Health & Saf. Code, § 11350, subd. (a)); count VII, maintaining a place for the purpose of narcotics trafficking or use (Health & Saf. Code, § 11366); count VIII, misdemeanor resisting arrest (Pen. Code,[4] § 148, subd. (a)(1)); and count IX, misdemeanor destruction of evidence (§ 135).

As to counts I through III, and counts V through VII, it was alleged defendant had one prior strike conviction (§ 667, subds. (b)-(i)), and one prior prison term enhancement (§ 667.5, subd. (b)).

## Motions and plea

As we will discuss in greater detail below, defendant filed a motion to quash the search warrant, arguing the outbuilding was his separate residence, and Officer Gonzales's affidavit filed in support of the warrant failed to establish probable cause to search his separate residence. Defendant also filed a separate motion to suppress the evidence seized during the search of the outbuilding, and argued the search of his separate residence exceeded the scope of the warrant. The court denied both motions.[5]

---

[4] All further statutory citations are to the Penal Code unless otherwise indicated.

[5] Defendant initially filed a single pleading identified as a motion to traverse the search warrant and a motion to suppress evidence. Defendant later clarified the motion to traverse was actually a motion to quash the search warrant.

As we will discuss below, a defendant moving to *quash* a search warrant asserts the warrant on its face lacks probable cause. (*People v. Hobbs* (1994) 7 Cal.4th 948, 965, 974 (*Hobbs*).) A defendant moving to *traverse* a warrant "mount[s] a subfacial challenge, i.e., attack[s] the underlying veracity of statements made on the face of the search warrant application. [Citation.]" (*Id.* at p. 965.) Defendant never challenged the veracity of the statements in Gonzales's affidavit, and instead argued the affidavit itself failed to establish probable cause to search the outbuilding.

As we will also discuss below, the court conducted a series of hearings on the motion to quash limited to the four corners of the affidavit, heard arguments from the parties, and denied the motion. After it denied the motion to quash, the court conducted separate proceedings on defendant's motion to suppress evidence, held an evidentiary

**Plea proceedings and sentence**

Defendant subsequently pleaded no contest to count V, possession for sale of cocaine, and admitted the prior strike allegation. Pursuant to a negotiated disposition, he was sentenced to the upper term of four years, doubled to eight years as the second strike sentence, and the remaining charges and enhancements were dismissed.

## DISCUSSION

### I. The court properly denied the motion to quash

Defendant contends the court should have granted his motion to quash the search warrant because the outbuilding was his separate residence, and Officer Gonzales's affidavit failed to set forth probable cause to search his separate residence because there was no evidence that connected that structure to Sullivan or his narcotics sales.

#### A. Standard of review

A defendant moving to quash a search warrant asserts the warrant on its face lacks probable cause. (*Hobbs, supra,* 7 Cal.4th at p. 975.) The probable cause showing must appear in the affidavit offered in support of the warrant. (*People v. Carrington* (2009) 47 Cal.4th 145, 161.)

Probable cause exists when, based on the totality of the circumstances described in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place…." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 (*Gates*); *People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041.) Probable cause "is less than proof beyond a reasonable doubt [citation]; less than a preponderance of the evidence [citation]; and less than a prima facie showing [citation]." (*People v Tuadles* (1992) 7 Cal.App.4th 1777, 1783.) It requires only a "substantial chance" rather than an actual showing of criminal activity. (*Ibid.*; *Gates*, *supra*, 462 U.S. at pp. 243-244, fn. 13.)

---

hearing, and then denied the motion. We will separately address the relevant evidence and the superior court's denials of the two motions.

8.

"In reviewing a search conducted pursuant to a warrant, an appellate court inquires 'whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.' [Citations.] 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.] The magistrate's determination of probable cause is entitled to deferential review. [Citations.]" (*People v. Carrington*, *supra*, 47 Cal.4th at p. 161.)

"Courts have a 'strong policy favoring search by warrant rather than upon other allowable basis.' [Citations.] For this reason, when, as here, the police do obtain a warrant, that warrant is presumed valid. 'Thus if the defendant attempts to quash a search warrant, as defendant here seeks to do, the burden rests on him.' [Citation.]" (*People v. Amador* (2000) 24 Cal.4th 387, 393.)

"[I]t is settled that 'the warrant can be upset only if the affidavit fails as a matter of law … to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit .… [Citations.]' [Citation.]" (*Hobbs*, *supra*, 7 Cal.4th at p. 975; *People v. Thuss* (2003) 107 Cal.App.4th 221, 235.) Given the law's preference for warrants, doubtful or marginal cases should be resolved in favor of upholding the warrant. (*United States v. Ventresca* (1965) 380 U.S. 102, 109; *People v. Eubanks* (2011) 53 Cal.4th 110, 133; *People v. Garcia* (2003) 111 Cal.App.4th 715, 720.)

With these standards in mind, we turn to defendant's motion and the court's ruling.

**B.** **Defendant's motion**

Defendant filed a motion to quash the search warrant and argued the affidavit failed to set forth probable cause to search his separate residence. Defendant conceded Officer Gonzales's affidavit set forth probable cause to search Sullivan and the main house. Defendant also conceded the warrant authorized search of "any out buildings … or other structures" associated with the premises.

However, defendant argued the affidavit failed to set forth probable cause to search any outbuildings or his separate residence on the premises. Defendant asserted that in his affidavit, Officer Gonzales never described another structure which was connected to the methamphetamine transactions on the property. Gonzales never asserted Sullivan had possession or control of any other structures, specifically requested to search any outbuildings, or cited to his knowledge and experience to request to search anyplace other than the main house.

Defendant asserted the outbuilding was "a detached house" and "a separate living quarter" where he lived, it had kitchen, bathroom, and bedroom facilities, and the affidavit never averred that defendant lived in the main house or was involved in Sullivan's methamphetamine sales. Defendant argued he had "standing" to challenge the validity of the warrant and search because he had sole possession and control of the "secondary residence."

Defendant argued the affidavit lacked probable cause to support the search of his "secondary residence" in the outbuilding, the affidavit never alleged a nexus or connection between Sullivan's activities in the main residence and defendant's "detached" house, and the contraband seized from defendant's residence should be suppressed.

Defendant thus moved to quash the warrant as it applied to his separate and detached residence on the premises, and exclude the evidence seized from that structure.

*The prosecution's opposition*

In opposition to the motion to quash, the prosecutor argued defendant lacked "standing" to challenge the validity of the warrant and search. The prosecutor also argued the search of the detached structure was expressly authorized by the warrant because it was an outbuilding on the same property as the main house, and the officers did not have any objective evidence to distinguish the front residence from the outbuilding, or to suggest the outbuilding was a separate residence. The prosecutor further asserted that it was reasonable to include the outbuilding in the search warrant based on the affidavit's discussion about storage places for narcotics.

### C. Defendant's testimony about his residency

In support of his "standing" argument, defendant testified at the hearing on the motion to quash for the limited purpose of explaining his residency in the outbuilding. Defendant testified there was more than one residence at 20200 Fourth Street. Sullivan lived in the front house. Defendant testified he lived in the detached house in the rear, and paid $300 per month to rent it from Sullivan's mother. Defendant testified at the time of the search, he had signed a lease for three months and had just moved in. Defendant's house had a kitchenette, a small refrigerator, a restroom, and a sleeping area. It had a separate door from the main house, and defendant was the only person who had the key to the door and dead bolt.

### D. The court's denial of the motion to quash

The court denied defendant's motion to quash.[6] First, the court relied on defendant's testimony and found he had "standing" to challenge the search.[7] Next, the

---

[6] The court issued a tentative ruling to deny the motion to quash, and then conducted a hearing to hear further arguments from the parties. Thereafter, the court made additional oral findings and adopted the tentative ruling to deny the motion.

[7] Both the court and the parties discussed whether defendant had "standing" to challenge the search in this case. While this is not an issue on appeal, we note "the

court clarified that for purposes of the motion to quash, it was limited to reviewing the four corners of Officer Gonzales's affidavit to determine if there was probable cause to support the inclusion of outbuildings in the search warrant.

The court acknowledged that in his affidavit, Officer Gonzales never mentioned the existence of a separate or detached structure, residence, or other dwelling on Sullivan's property. In addition, Gonzales never provided any justification or reason for wanting to search any detached structures, as he did in relation to his request to search vehicles or persons related to the premises.

The court found Gonzales's declarations about the informant's purchase of methamphetamine from Sullivan provided the magistrate "with a reasonable ground to believe that contraband might be found in Sullivan's residence…." The court also found the target of the warrant was Sullivan's drug activities at his residence, rather than defendant and the detached structure.

However, the court further found the affidavit described the target of the search as a single-family dwelling unit under Sullivan's control rather than a multiresidential structure. The court noted there was "nothing in the face of the affidavit that suggests to the Court that this is a multifamily unit and/or multidwelling unit."

The court cited the "general rule" that "a warrant authorizing a search of 'premises' consisting of a single swelling unit at a particular address also allows the search of a garage, outbuilding and other appurtenances in addition to a main building…."

United States Supreme Court has largely abandoned use of the word 'standing' in its Fourth Amendment analyses. [Citations.] It did so without altering the nature of the inquiry: whether the defendant, rather than someone else, had a reasonable expectation of privacy in the place searched or the items seized…." (*People v. Ayala* (2000) 23 Cal.4th 225, 254, fn. 3.)

"Under the circumstances set forth in the affidavit, it was reasonable for the magistrate to additionally authorize the search of any owner-controlled structures on the premises *because Sullivan may have been using additional structures on the property to hide contraband or other evidence of narcotics sales*." (Italics added.)

The court additionally found the magistrate had probable cause to include the outbuilding in the warrant, even though Officer Gonzales's affidavit did not describe a connection between Sullivan's drug sales from the main house and the need to search an outbuilding.

"There was sufficient probable cause to issue the warrant which permitted a search of 'any out buildings, garage, sheds, or other structures found to be associated with the premises' *because it was established that Sullivan was engaged in narcotics trafficking and that he was using his residence to sell narcotics.*" (Italics added.)

Finally, the court concluded that even if the affidavit and warrant lacked probable cause, the good faith exception applied to the search of the outbuilding because the affidavit "was not so lacking in indicia of probable cause as to render a reasonably well-trained officer's reliance on it to be unreasonable…."

E.    **Analysis**

It is undisputed the warrant in this case authorized the search of the residence at 20200 Fourth Street, along with any persons found on the premises, any vehicles found on and associated with the premises, and "*any out buildings, garage, sheds, or other structures found to be associated with the premises*." (Italics added.) The question is whether there was probable cause for the magistrate's inclusion of the outbuilding in the warrant.

To guard against exploratory searches, the law requires that a warrant particularly describe the place to be searched. (*Maryland v. Garrison* (1987) 480 U.S. 79, 84 (*Garrison*).) When the warrant is directed at a dwelling, the particular "place" refers to a single living unit, i.e., the residence of one person or family. (*People v. Estrada* (1965) 234 Cal.App.2d 136, 146.)

13.

"[T]he Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence." (*United States v. Cannon* (9th Cir. 2001) 264 F.3d 875, 880, fn. omitted (*Cannon*).) "[A] warrant to search 'premises' located at a particular address is sufficient to support the search of outbuildings and appurtenances in addition to a main building when the various places searched are part of a single integral unit. [Citations.]" (*People v. Dumas* (1973) 9 Cal.3d 871, 881, fn. 5; *People v. Weagley* (1990) 218 Cal.App.3d 569, 573; *People v. Smith* (1994) 21 Cal.App.4th 942, 950; *People v. Minder* (1996) 46 Cal.App.4th 1784, 1788-1789.)

While a warrant to search a single dwelling unit will also permit the search of outbuildings such as garages, it will not extend to a search of multiple residential dwellings on the same property unless there is probable cause to search each unit, or a reasonable basis for believing that the entire premises area a single living unit. (*People v. Estrada*, *supra*, 234 Cal.App.2d at p. 146; *People v. Dumas*, *supra*, 9 Cal.3d at p. 881, fn. 5.)

Defendant asserts the affidavit failed to establish probable cause to search any outbuilding, shed, or garage, because Officer Gonzales never addressed the existence of any separate structures on the premises, and he never cited to his investigative experience to assert that such buildings may be connected to Sullivan's drug activities. These arguments are without merit. Officer Gonzales's affidavit stated the confidential reliable information purchased 0.4 grams of methamphetamine from Sullivan at the residence located on 20200 Fourth Street. The informant further reported that Sullivan also sold drugs at the place where Sullivan was employed, and Sullivan told the informant that he would sell drugs to him again.

While the informant only purchased a small amount of methamphetamine from Sullivan, the informant's information established Sullivan's sale of drugs to him was not a one-time event. Based on this information, there was probable cause that Sullivan was

selling drugs, he was using his residence as one of the sales locations, and his supply of narcotics could be stored on the premises. While Gonzales's affidavit did not expressly request the search of outbuildings, he discussed how a search could reveal who was in control of the premises or any storage facilities.

It was thus reasonable for the magistrate to authorize a search of the entire property, including any outbuilding, garage, or shed, because there was reason to believe the objects of the search could be located in various areas of the property. (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 625-626; *People v. Minder*, *supra*, 46 Cal.App.4th at pp. 1788-1789.)

As for defendant's arguments about the residential nature of the outbuilding, Officer Gonzales's affidavit did not include any evidence there were multiple dwellings on the property at 20200 Fourth Street. The affidavit and warrant described the premises as a one story residence, with the address on a post in front of the house. Defendant's motion to quash was limited to the four corners of the affidavit and warrant, and there was no evidence from which the magistrate could have concluded there were multiple residential dwellings on the property. (*Garrison*, *supra*, 480 U.S. at p. 81.)

We thus conclude the superior court properly denied defendant's motion to quash the warrant, and there was probable cause for the magistrate to include the search of outbuildings, garages, or sheds in the warrant.

## II.     Defendant's motion to suppress was properly denied.

Defendant next contends the court erroneously denied his separate motion to suppress the evidence seized during the search of the outbuilding. Defendant argues the search exceeded the scope of the warrant because the outbuilding constituted his separate residence, the officers realized it was a residence when they entered, and the good faith exception to the warrant requirement does not apply.

15.

## A. Standard of review

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

## B. Defendant's suppression motion

In his suppression motion, defendant argued the search of the outbuilding exceeded the scope of the warrant because the warrant only authorized the search of Sullivan's house, the outbuilding was defendant's separate residence, defendant and his residence was not involved in the informant's controlled purchase, and the warrant did not authorize the search of defendant's residence.

Defendant also argued the officers' reliance on the warrant to search his separate residence was not in good faith because the affidavit was so lacking in probable cause that it was unreasonable to rely on it, the officers never investigated his residence before it sought the warrant, and they should have realized it was a separate residence when they entered.

The prosecutor replied the warrant authorized the search of the outbuilding, the good faith exception applied because the officers did not believe the outbuilding was a separate residence, and they reasonably relied on the warrant to search the separate structure.

## C. The evidentiary hearing

The court conducted an evidentiary hearing on the suppression motion and Officer Gonzales was the only witness. Gonzales testified about the informant's controlled purchase which was the basis for the search warrant, the preparation of the affidavit, and the search itself.

16.

Officer Gonzales testified he did "a lot of investigation" about the property to prepare the search warrant affidavit. He looked at the property on Google Earth and went to the area to look at the property at night. Gonzales testified he only saw lights from the main structure. He was in a position where he could have seen lights from the second structure, but he did not see the second structure or any lights.

Gonzales conceded when he prepared the affidavit, he did not have any information about defendant or to connect the second structure with narcotics sales. However, Gonzales explained that "in the past, we've found illegal substances, guns, people, in separate buildings."

As for the search, Officer Gonzales testified five members of his team participated in the execution of the search warrant. The property was located in a residential neighborhood. Gonzales observed two structures on this property when he arrived. The main house and the outbuilding were side-by-side, and they were painted the same color. The two structures did not have separate addresses. There was a driveway which led to a carport, and the carport was connected to the second structure, which was detached from the main house. A small truck was parked in the driveway which led to the carport. Gonzales did not have any information to connect the truck to Sullivan.

Officer Gonzales testified that when the officers initially arrived at the property, they approached the main house and provided knock/notice. They entered and found Sullivan inside the house. Hannah Steen was walking out of the house from another door.

Gonzales testified the officers "realized we needed to … regroup and make contact in the … second building just to clear it." Gonzales did not ask Sullivan or Steen about the second structure, and he did not conduct any investigation to determine if someone lived there.

Gonzales testified the second building was about five feet from the first building. "You couldn't get a car between there.… You just basically stepped out of the house,

17.

took a step, and then next thing you know, you're stepping up to the next house." The second building had a door with a deadbolt. There was no mailbox, name, or address on the door to indicate someone else lived there.

Officer Gonzales testified the second structure appeared to be "a washhouse or something." (SRT 18) The second structure was about 15 feet by 12 feet. Gonzales did not believe it was a separate residence or dwelling before he entered it.

> "I'm going by the age of the property, and I remember growing up, we had a similar place, and it was, like, a detached—I'm sorry, washhouse where the washing machines were, where my mom and my grandmother hand washed the clothes and stuff like that."

Gonzales conceded he described the second structure as a "detached house" in the return to the search warrant.

Gonzales knew the warrant authorized the search of any outbuildings, garages, sheds, or other structures associated with the premises. The officers provided knock/notice because it was required by law. They forced open the door and entered the second building. One of the officers called out: " 'He's flushing.' " Gonzales testified there was a bathroom in the second building, and defendant was on the floor and struggling with an officer. The officer was trying to get defendant away from the toilet to prevent him from flushing it.

Officer Gonzales conceded that after the search, he realized it was a detached dwelling residence "pretty much."

D.     **The court's denial of the suppression motion**

The court denied the suppression motion. The court reviewed the photographic exhibits which had been introduced into evidence, and agreed with Officer Gonzales's description of the second structure. "[F]rom my history and experience, I could look at it that a lot of people from my heritage would have detached kitchens and others would use it in this fashion."

18.

The court noted the photographs showed the carport led to the second structure. There was no other garage area for the main house, and the main house was in very close proximity to the second structure. Both structures were painted the same color, there was only one address and mailbox, and no obvious information from Google Earth that the second structure was a separate residence.

> "All of the evidence I have is that from what the officer[s] could see and observe, this was all one structure associated with one house, although attached, and the detached garage[] with the small outbuilding is not an unusual structure in homes of this vintage, and so there need[s] to be more in order to set this apart."

The court further found there was "no dispute" that once the officers entered the second structure, "it's very clear to them at that point that it's a residence[,]" but it was "equally clear" that they did not know it was someone's residence before they entered.

The court found the warrant extended to the search of the second structure since it was in close proximity to the main house and the warrant covered outbuildings and sheds, "not only for contraband but also to show control, identification, possession of the premises .…" The court did not know what else the officers could have done to investigate the premises without "tipping off their investigation given what was there…." The court acknowledged defendant's argument that the officers should have known it was a residence based on the locked door and windows, and they should have asked about it. However, the court believed it was not "unreasonable that it wasn't done under the circumstances."

> "Again, if I had more evidence that the main house was a completely independent structure with its own garage, if there was more distance between the two, if something distinguished them as being separate and independent and individual residences, you've got a better argument for your case, but I don't see that."

**E.    Analysis**

Defendant relies on *Garrison*, *supra*, 480 U.S. 79, and *Cannon*, *supra*, 264 F.3d 875, and argues the officers' search of his separate residence exceeded the scope of the

19.

warrant's provision to search any outbuilding. As explained *ante*, a warrant to search a single dwelling unit located at a particular address may validly permit the search of outbuildings and appurtenances thereto. However, it will not support the search of multiple living units on the same property absent the existence of probable cause to search each unit or a reasonable basis for believing that the entire premises are a single living unit. (*People v. Estrada, supra,* 234 Cal.App.2d at p. 146; *People v. Dumas, supra,* 9 Cal.3d at p. 881, fn. 5.)

The constitutionality of the officers' execution of a search warrant is assessed "in light of the information available to them at the time they acted…." (*Garrison*, *supra*, 480 U.S. at pp. 85, 87-88.) A search of multi-units when the warrant specifies one dwelling is lawful if based on the officers' reasonable belief those quarters were within the scope of the warrant. (*Id.* at pp. 88-89.)

In *Garrison*, *supra*, 480 U.S. 79, the police obtained a search warrant for the entire third floor of a building they reasonably believed contained only the suspect's apartment. However, there was a second apartment on the same floor which was occupied by the defendant. The officers mistakenly believed it was the suspect's apartment and searched it pursuant to the warrant. The officers discovered contraband, then realized they were inside a separate unit, which did not belong to the suspect, and they stopped the search. (*Id.* at pp. 80-82.)

*Garrison* held suppression of the contraband found during the search of the defendant's apartment was not required because the warrant was valid when issued, and the officers did not know at the time of the search that the premises contained separate units or belonged to someone other than the original suspect. (*Garrison*, *supra*, 480 U.S. at pp. 86-89.)

> "If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to [the suspect's] apartment.

20.

Moreover, as the officers recognized, they were required to discontinue the search of [defendant's] apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. The officers' conduct and the limits of the search were based on the information available as the search proceeded. While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." (*Id.* at pp. 86-87, fn. omitted.)

*Garrison* concluded the officers properly responded to the command contained in a valid warrant, "even if the warrant is interpreted as authorizing a search limited to [the suspect's] apartment rather than the entire third floor. Prior to the officers' discovery of the factual mistake, they perceived [the suspect's] apartment and the third-floor premises as one and the same; therefore their execution of the warrant reasonably included the entire third floor. Under either interpretation of the warrant, the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment. [Citation.]" (*Garrison*, *supra*, 480 U.S. at pp. 88-89, fns. omitted.)

However, *Garrison* cautioned that " '[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.' [Citation.]" (*Garrison*, *supra*, 480 U.S. at p. 87, fn. 11.)

In *Cannon*, *supra*, 264 F.3d 875, officers obtained a warrant to search a particular address based on incriminating information about the property owner, who lived in the main house. Prior to conducting the search, the officers reasonably believed the rear building was a garage. When they executed the warrant and entered the garage, they realized it had been converted into a separate rental residence, and a third party lived there. After discovering the garage actually consisted of a rental unit and two storage

21.

rooms, they searched the entire building and found marijuana plants in the storage rooms. (*Id*. at pp. 877-878.)

*Cannon* held the separate rental unit in the converted garage was not within the scope of the warrant. *Cannon* further held the marijuana plants would have been inadmissible if found within the rental unit, because the warrant did not describe a separate rental unit and the affidavit to support the warrant did not establish probable cause to search the rental unit. However, the storage rooms were within the scope of the warrant because they were accessible from the outside of the garage, they had not been rented along with the dwelling, and they were within the curtilage of the house and properly searched pursuant to the warrant. (*Cannon*, *supra*, 264 F.3d at pp. 878-881.)

In this case, defendant contends the officers exceeded the scope of the warrant because his residence was a separate structure, it was not an outbuilding or a garage, and the residential nature of the structure was apparent. Based on the evidence at the suppression hearing, however, the officers had no reason to know there were multiple and separate residences at 20200 Fourth Street. When Officer Gonzales conducted surveillance of the property to prepare the affidavit, he did so at night and only saw lights in the front structure. He did not see any lights from any other part of the property, he did not see the outbuilding, and he did not see anything to the contrary when he researched the property on Google Earth.

The warrant authorized the search of the entire premises, including any outbuilding, shed, or garage. When the officers arrived to execute the warrant, there was no outward indication the outbuilding was a separate residence. There was only one mailbox and one posted address for the entire premises at 20200 Fourth Street. Both structures were painted the same color. There was one driveway adjacent to the residence, and it led to a carport attached to the outbuilding. There was no other garage area connected to Sullivan's house. The outbuilding was very small, about 12 feet by 15 feet. There was no name, address, or mailbox on the outbuilding. (See, e.g., *United*

22.

*States v. Noel* (6th Cir. 1991) 938 F.2d 685, 686; *United States v. Kyles* (2d Cir. 1994) 40 F.3d 519, 524; *United States v. Whitney* (9th Cir. 1980) 633 F.2d 902, 907-908.)

While the officers encountered a lock on the outbuilding's door, that fact is not dispositive of the structure as a separate dwelling, particularly given the affidavit's discussion about searching for keys to storage facilities. In addition, defendant did not offer any evidence to contradict Officer Gonzales's testimony that, based on the age of the property and his own personal experience, he believed the small outbuilding was a type of washroom "where the washing machines were." The superior court appeared to agree with this description.

Based on the information available to the officers when they executed the warrant, it was reasonable for them to believe the outbuilding was part of Sullivan's residence at 20200 Fourth Street rather than a separate structure, and subject to the warrant's provisions to search any outbuilding, garage, or shed. (*Garrison*, *supra*, 480 U.S. at p. 88.)

Defendant relies on *Garrison* and *Cannon* and argues that once the officers entered the outbuilding and realized it was a separate residence, and defendant lived there instead of Sullivan, they were required to discontinue their search of his residence because it was not part of Sullivan's house and the search exceeded the scope of the warrant. Defendant's arguments about the scope of the warrant are refuted by the evidence from the suppression hearing. As we have explained, the warrant authorized the search of the residence, any outbuildings, and any persons found on the premises who were associated with the premises.

When the officers entered the outbuilding, they immediately encountered defendant as he tried to flush contraband down the toilet. In contrast to *Cannon*, their initial discovery of defendant and a toilet in the outbuilding did not automatically transform the structure into a separate residence, or indicate defendant was not associated with Sullivan. The record strongly suggests that, after taking defendant into custody, the

23.

officers recovered the large amounts of methamphetamine and cocaine which he tried to destroy in the toilet. While the officers eventually determined the outbuilding also contained a kitchen, mattress, and living area, the record reflects the officers saw defendant flushing something down the toilet, restrained defendant, and recovered the contraband, before they discovered the outbuilding constituted a type of residence, or that someone other than Sullivan was living there.

The officers reasonably relied on the warrant when they entered the apparent outbuilding, saw defendant trying to destroy contraband, and seized the large amount of narcotics from the toilet, even if their subsequent search of the outbuilding exceeded the scope of the warrant once they determined someone other than Sullivan lived there.

## DISPOSITION

The judgment is affirmed.